**UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRADLEY JAMES CARLSON, | ) | Case No. 24-40261-can7 |
| | ) | |
| Debtor. | ) | |

**<u>SUGGESTIONS IN OPPOSITION TO THE UNITED STATES TRUSTEE'S MOTION
TO COMPEL RESPONSES TO SUBPOENA DUCES TECUM
ISSUED TO CHRISTINE BRANDOW</u>**

Christine Brandow, by and through undersigned counsel, respectfully opposes the United States Trustee's Motion to Compel on the grounds of Fifth Amendment privilege and lack of custody care and control of the requested documents. In support of these Suggestions, Christine Brandow states as follows:

<u>INTRODUCTION</u>

The circumstances of the subpoena at issue involve Ms. Brandow's rights under the Fifth Amendment under the United States Constitution and Article I, Section 19 of the Missouri Constitution. The United States Trustee ("UST") recognized in its Motion to Compel that after serving the subpoena, the UST became aware of a criminal investigation by the Federal Bureau of Investigation into matters raised by the Receiver's report. The subpoena goes to the issues that would be subject to that investigation. Therefore, Ms. Brandow's Fifth Amendment rights against self-incrimination have become an issue of paramount importance, not lightly considered. Upon review of the circumstances and the law on this issue, this Court must deny the UST's Motion to Compel and preserve Ms. Brandow's rights guaranteed by the United States Constitution and the Missouri Constitution.

<u>LEGAL STANDARD</u>

The Fifth Amendment to the United States Constitution and the Missouri Constitution guarantee an individual's right against self-incrimination. Under the Fifth Amendment of the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself." This privilege may be asserted in civil litigation, where the answers would support a criminal conviction. *Allen v. Illinois*, 478 U.S. 364, 106 S. Ct. 2988, 92 L. Ed. 296 (1986). In a civil case, it protects "an individual from compelled production of his personal

1

4913-7220-7371, v. 2

papers and effects as well as compelled oral testimony." *Bellis v. United States*, 417 U.S. 85, 87, 94 S. Ct. 2179, 40 L. Ed. 2d 678 (1975). "Waiver of constitutional rights . . . is not lightly to be inferred. A witness cannot properly be held after claim to have waived his privilege . . . upon vague and uncertain evidence." *Emspak v. United States*, 349 U.S. 190, 196, 75 S. Ct. 687, 691 (1955).

Similarly, the privilege against self-incrimination is secured by Article I, § 19 of the Missouri Constitution. This privilege may be asserted in a civil proceeding whether or not a criminal charge is pending. *State ex rel. Flynn v. Schroeder*, 660 S.W.2d 435, 436 (Mo.App. 1983). "It may also be asserted in the discovery process." *State ex rel. Lieberman v. Goldman*, 781 S.W.2d 802, 805 (Mo. Ct. App. 1989)(citing *Use of Privilege Against Self-Incrimination in Civil Litigation*, 52 Va.L.Rev. 322 (1966)).

ARGUMENTS AND AUTHORITY

**I.      Ms. Brandow's assertion of her privilege against self-incrimination is appropriate.**

"[T]here is no question that an individual is entitled to invoke the privilege against self-incrimination during a civil proceeding." United States v. 4003-4005 5th Ave., 55 F.3d 78, 82 (2d Cir. 1995) (citing *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 94 S. Ct. 316 (1973)). Ms. Brandow learned of the FBI investigation around the same time as the UST. This investigation goes directly to the information requested in the subpoena. This is proven by the fact that the criminal investigation emanates from the Receiver's report about the Debtor in this bankruptcy. Responses to the subpoena could expose Ms. Brandow to self-incrimination. While Ms. Brandow does not admit to any wrongdoings, there is no doubt that Ms. Brandow's Constitutional rights against self-incrimination are properly raised here.

**II.     Ms. Brandow is still entitled to her Fifth Amendment right.**

A waiver of Fifth Amendment privilege must be made "voluntarily, knowingly, and intelligently." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987). To meet this requirement, the waiver must have been made "with a full awareness both of the nature of the right being abandoned and of the consequences of the decision to abandon it." *Id*. Courts will not lightly infer a waiver of an individual's privilege against self-incrimination. *Klein v. Harris*, 667 F.2d 274, 287 (2nd Cir. 1981) (citing *Smith v. United States*, 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949)). A trial court must "indulge every

2

reasonable presumption against waiver of fundamental constitutional rights[.]” *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938) (internal quotations omitted). “This is particularly true… when the alleged waiver is accomplished by inaction rather than action.” *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 81 (2d Cir. 1998)(citing *In re DG Acquisition Corp.*, 213 B.R. 883, 887 (S.D.N.Y. 1997) (“[The] presumption [against waiver] is especially heavy when the purported waiver has occurred through non-assertion.”).

### A.  Ms. Brandow's privilege applies to providing responses to the subpoena.

Compliance with broad sweeping subpoenas would involve a testimonial act because the act of turning over documents in response to a broad-sweeping subpoena involves discretionary judgments about the documents themselves. *In re Grand Jury Proceedings*, 41 F.3d 377, 380 (8th Cir. 1994). When the subpoena contains broad language, the witness must discriminate among documents, thereby providing identifying information that is relevant to the authenticity of the documents. *Id*. at 381. The subpoena in this case reflects an identical circumstance of a broad sweeping subpoena that involves a testimonial act.

The subpoena encompasses a wide range of documents and communications. For example, paragraph 2 requests “[a]ll documents which refer to discuss or relate to your service for any entity as an owner, officer, member, partner, organizer or registered agent for the period of January 1, 2019 to present.” Then, as if the prior paragraphs were not broad enough, the UST includes the catch-all in paragraph 8 requesting “[a]ll electronically stored information, …, not all already produced in response to a prior request, for any entity owned or controlled by Mr. Carlson.” This final request does not include any limitation of time frame, nor does it explain the use of the words “owned or controlled.” Effectively, the subpoena is requesting all documents for any business Ms. Brandow has been involved in for the years 2019, 2020, 2021, 2022, 2023, and 2024, and any documents she has for any entity Mr. Carlson has “owned or controlled” in his entire life, without distinguishing the scope or extent Mr. Calrson's ownership interest that could include entities in which Mr. Carlson was merely a stockholder.

Notwithstanding the fact that Ms. Brandow could not possibly be in possession of all this information, producing it would require Ms. Brandow to discriminate among documents which would necessarily provide information as to their authenticity. The language of the subpoena is simply too broad and fails to request documents in an objective manner. Accordingly, Ms. Brandow's Fifth Amendment applies to the production of documents responsive to the subpoena.

3

### B. Ms. Brandow has not waived her Fifth Amendment privilege.

While the UST references Ms. Brandow's failure to assert any privilege under Fed. R. Civ. P. 45(e)(2), this case displays unusual circumstances that warrant the preservation of her Fifth Amendment privilege. First, it is important to reiterate that courts will not lightly infer a waiver of the right against self-incrimination, especially when the purported waiver is based upon inaction, i.e. not responding to a subpoena. *See e.g.*, *DG Acquisition Corp.*, 213 B.R. at 887. Second, courts have often allowed untimely objections when "unusual circumstances" exist. *Whatley v. Canadian Pac. Ry. Co.*, No. 1:16-cv-74, 2021 U.S. Dist. LEXIS 106853, at *15 (D.N.D. June 8, 2021)(citing *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002)). *McCoy* provided example of "unusual circumstances" including: "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena." *McCoy*, 211 F.R.D. at 385.

At a minimum, this subpoena is overly broad on it face and exceeds the fair boundaries of discovery. As explained, above, the subpoena is broad in scope and includes numerous paragraphs that seek a wide range of documents. Additionally, Ms. Brandow is not a party to this bankruptcy. The UST recognized that there were initial communications where the parties were acting in good faith which continued until after the time to assert objections had otherwise expired under Rule 45. The parties were aware and discussed responding to the subpoena considering the criminal investigation. During these communications, the UST would have been aware of the likelihood of objections particularly where the parties discussed the scope of the subpoena. Even if that is not a proper assertion of privilege, it would have at least made the UST aware that the assertion may be forthcoming. Moreover, the existence of the criminal investigation has imposed a real and appreciable risk of self-incrimination for testamentary acts. Accordingly, this case presents the "unusual circumstances" which warrant a protection of Ms. Brandow's Fifth Amendment right.

### C. Ms. Brandow's Fifth Amendment right must be protected even if the court does not find "unusual circumstances."

Courts have permitted untimely assertions of Fifth Amendment privilege by recognizing the fundamental importance of the right against self-incrimination. *See e.g.*, *SEC v. Coll. Bound*,

4

849 F. Supp. 65, 67 (1994); *FTC v. Singer*, 534 F. Supp. 24, 26 (N.D. Cal. 1981), *aff'd* 668 F.2d 1107 (9th Cir. 1982); *Brock v. Gerace*, 110 F.R.D. 58 (D.N.J. 1986). Courts have found that Fifth Amendment privilege is not necessarily waived by failing to timely respond to a subpoena. *SPV-LS, LLC v. Herbst*, No. 16-MC-197 (PART ONE), 2016 U.S. Dist. LEXIS 73897, at *5 (S.D.N.Y. June 3, 2016) (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81-82 (2d Cir. 1998)). This stems from the notion that courts will generally not infer a waiver of Fifth Amendment privilege from inaction. *Id*. (citing *Emspak*, 349 U.S. at 196). The Court should find the same principles apply here. Ms. Brandow's Fifth Amendment privilege is of fundamental importance that warrants protection.

The court in *DG Creditor Corp.*, 151 F.3d 75 (2d Cir. 1998) underwent a robust analysis of this particular issue in the context of a bankruptcy subpoena. The court recognized that Fifth Amendment "privilege is qualitatively distinct from other discovery objections." *Id*. at 81 (citation omitted). "[W]here a constitutional privilege is involved a trial court possesses the discretion not to find waiver." *Id*. The court concluded that the trustee did not make a showing of prejudice which is necessary to find a waiver of fifth amendment privilege. *Id*. at 83 (citing *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981) ("waiver of the fifth amendment's privilege against self-incrimination should be inferred only in the most compelling of circumstances. Such circumstances do not exist unless a failure to find a waiver would prejudice a party to the litigation.") (citation omitted). Similarly, the court can consider whether the party raising the privilege acted in bad faith. *Id*. at 84. The UST does not present any facts to show that it will be prejudiced or claim that Ms. Brandow is acting in bad faith. Rather, the UST recognizes the complexities of these circumstances for Ms. Brandow especially considering she is a third-party, not the bankruptcy debtor.

Ms. Brandow's rights must be protected under these circumstances. The risk of complying with the subpoena, thereby being a testimonial act puts Ms. Brandow in a complicated situation. It would be unjust to expose Ms. Brandow as the subject of a criminal investigation by finding a waiver of Fifth Amendment privilege. Therefore, the Court must permit Ms. Brandow to maintain her right against self-incrimination and not require her to produce documents protected by her Fifth Amendment privilege.

4913-7220-7371, v. 2

### III.     Ms. Brandow's privilege cannot be asserted until a question is asked.

The subpoena at issue also mentions the UST's intention to take the examination of Ms. Brandow. In a civil case, there is no blanket Fifth Amendment right to refuse to answer questions. *Capitol Prod. Corp. v. Hernon*. 457 F.2d 541, 542 (8th Cir. 1972). The Fifth Amendment's protections against self-incrimination must be invoked on a question-by-question basis. *Id*. To the extent that Ms. Brandow has not been asked a question, she has not yet had the opportunity to raise her Fifth Amendment right.

If the court finds a waiver of privilege, then there is a risk that Ms. Brandow could be compelled to answer questions in the future to which she would otherwise assert her Fifth Amendment right. A person who chooses to provide evidence in a civil case in spite of the risk that they evidence may be used against him in a criminal prosecution involving the same subject matter waives her right as to the information provided. *United States v. Kordel*, 397 U.S. 1, 10, 90 S. Ct. 763, 768 (1970). If Ms. Brandow is forced to respond to the subpoena, thereby making a testamentary act, she becomes exposed to a waiver of her Fifth Amendment right during future questioning. Even if she continues to reassert her Fifth Amendment privilege in this case, the damage would have already been done as to any documents or communications she is compelled to turn over. The Court must weigh the risk that compelling production would have especially since Ms. Brandow has not been asked any questions at this time.

### IV.     Ms. Brandow cannot be compelled to produce documents she does not have.

Notwithstanding the constitutional protection against self-incrimination, Ms. Brandow has produced documents in this case after communications with the UST which do not involve her Fifth Amendment right. While Ms. Brandow understands the UST's belief that she is in possession of more information that would not ordinarily be subject to her Fifth Amendment right, the UST's belief is incorrect.

"It is well settled that a person cannot be compelled to produce, under a subpoena, a document which is neither in his possession nor under his control." *Acosta v. La Piedad Corp.*, 894 F.3d 947, 951 (8th Cir. 2018) (quoting *Traub v. United States*, 232 F.2d 43, 47 n.9, 98 U.S. App. D.C. 43 (D.C. Cir. 1955)); *accord In Re Grand Jury*, 821 F.2d 946, 951 (3d Cir. 1987) ("A party's lack of possession or legal control over documents requested by a subpoena is normally a valid defense to a subpoena."), *cert. denied*, 484 U.S. 1025, 108 S. Ct. 749, 98 L. Ed. 2d 762

6

4913-7220-7371, v. 2

(1988). "[A] party's ability to produce documents responsive to a valid subpoena is an essential prerequisite to exercise of the judiciary's potent contempt powers." 894 F.3d at 951.

The UST has requested, in large part, documents of the Debtor's businesses. Documents related to the Debtor's businesses are not within the care custody or control of Ms. Brandow. Therefore, she cannot produce documents that she does not have.

To the extent that the subpoena requests documents associated with Ms. Brandow's business and the production of which would not be subject to Ms. Brandow's Fifth Amendment privilege, she is compiling and intends to produce those documents on or before the next hearing in this case on January 22, 2025.

CONCLUSION

Ms. Brandow's rights against self-incrimination must be protected. The existence of an ongoing investigation related to the information requested creates a real and appreciable risk that producing the information in response to a broad subpoena will be a testamentary act and result in a waiver of Ms. Brandow's privilege. This Court must permit Ms. Brandow to assert her Fifth Amendment privilege, whether through the finding of unusual circumstance or a refusal to infer a waiver. Notwithstanding her responses that are subject to privilege, Ms. Brandow is continuing to work with the UST to provide documents within her care, custody, or control that do not restrict her Fifth Amendment rights.

WHEREFORE, Ms. Brandow prays that this honorable court deny the United States Trustee's Motion to Compel and find that she is entitled to maintain and assert her Fifth Amendment right in this case for both the production of documents and future testimony.

Respectfully Submitted:

EVANS & MULLINIX, P.A.

*/s/ Colin N. Gotham*
Colin N. Gotham, KS #19538; MO #52343
7225 Renner Road, Suite 200
Shawnee, KS 66217
(913) 962-8700; (913) 962-8701 (Fax)
cgotham@emlawkc.com
*Attorneys For Debtor*

7

4913-7220-7371, v. 2

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically to those parties who have entered an appearance in the court's Electronic Court Filing (ECF) System on the date entered on the court's docket.


*s/ Colin N. Gotham*
Colin N. Gotham, KS #19538

4913-7220-7371, v. 2