# Exhibit G

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is made effective December 2, 2019 by **MULUNGAS, LLC,** a Missouri limited liability company ("Grantor"), with a mailing address of 3320 S. Outer Belt Road, Grain Valley, Missouri 64029, to and for the benefit of **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender"), with a mailing address of 12695 Metcalf Avenue, Overland Park, Kansas 66213.

## R E C I T A L S:

**A.** Grantor and **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Force") **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Mid-Western"), and **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Force Commercial" and together with Grantor, Force, Apex, MAG, and Mid Western collectively herein "Borrower") have executed and delivered to Lender that certain Business Loan Agreement (the "Loan Agreement") dated of even date herewith under the terms of which Lender has agreed to make the following loans: (i) a loan to and for Borrower in the original principal amount of **ONE MILLION and 00/100THS DOLLARS ($1,000,000.00)** (the "Apex Line of Credit Loan"), (ii) a loan to and for Borrower in the original principal amount of **TWO MILLION and 00/100THS DOLLARS ($2,000,000.00)** (the "MAG Line of Credit Loan"), (iii) a loan to and for Borrower in the original principal amount of **SIX HUNDRED SIXTY-TWO THOUSAND NINE HUNDRED FOURTEEN and 00/100THS DOLLARS ($662,914.00)** (the "Apex Term Loan"), and (iv) a loan to and for Borrower in the original principal amount of **TWO MILLION EIGHT HUNDRED THIRTY-TWO THOUSAND and 00/100THS DOLLARS ($2,832,000.00)** (the "Mulungas Term Loan").

**B.** (i) The Apex Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$1,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "Apex Line of Credit Note"), (ii) the MAG Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "MAG Line of Credit Note"), (iii) the Apex Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$662,914.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Apex Term Note"), and (iv) the Mulungas Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,832,000.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Mulugas Term Note").

**C.** For purposes of this Agreement the following definitions apply:

(i) the Apex Line of Credit Loan, the MAG Line of Credit Loan, the Apex

Term Loan, and the Mulungas Term Loan are collectively referred to herein as the "Loan";

(ii) the Apex Line of Credit Note, the MAG Line of Credit Note, the Apex Term Note, and the Mulungas Term Note are collectively referred to herein as the "Note"; and

(iii) all capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement.

**C.** Grantor is willing, on the terms and conditions contained herein, in the Loan Agreement, in the Note and in the other Loan Documents (as defined in the Loan Agreement), to secure Grantor's obligations under the Note and the other Loan Documents.

**D.** Lender has required as a condition to making credit available to Borrower under the terms of the Note and the Loan Agreement that Grantor secure Borrower's obligations to Lender with certain assets of the Grantor.

NOW THEREFORE, for and in consideration of the making of the Loan and the extensions of credit as contemplated under the Loan Agreement and as an inducement to Lender to do so, and for and in consideration of the mutual promises, covenants and agreements hereinafter set forth, Grantor and Lender hereby agree as follows:

1. <u>Creation of Security Interest</u>. Grantor hereby grants to Lender a lien on and security interest in and does hereby collaterally assign, pledge, mortgage, convey and set over unto Lender all of the assets of Grantor including, without limitation, the following whether now owned or hereafter acquired by or on behalf of Grantor (hereinafter referred to collectively as the "Collateral"):

A. All inventory of Grantor including Grantor's raw materials, work in progress, finished goods, merchandise, parts and supplies, goods held for sale or lease or furnished under contracts of service in which Grantor now has or hereafter acquires any right, and all documents of title, warehouse receipts, bills of lading, and all other documents of every type covering the forgoing;

B. All accounts, including trade accounts, account receivable, other receivables, or other right to payment for goods or services rendering owing to Grantor, amounts due from credit card payments, leases, rents, and license fees, and other rights to receive the payment of money;

C. All deposit accounts, including the Primary Deposit Account, deposits, monies, contract rights, documents, instruments, general intangibles, chattel paper, securities accounts, brokerage accounts (excluding all IRA and Keogh accounts) as those terms are defined in the Uniform Commercial Code ("UCC");

D All investment property and securities and Grantor's rights to receive distributions, dividends, or other benefits of ownership of all entities in which Grantor is a member;

7CV4595.DOCX

E.    All general intangibles of any kind including patents, trademarks, copyrights, trade names, created software, and licenses;

F.    All machinery, equipment, furniture, fixtures, furnishings, tools, software, and supplies; and

G.    All additions, accessions, modifications, improvements, replacements, and substitutions of any of the foregoing as well as all proceeds, whether cash, promissory notes, and other property, real or personal or otherwise, resulting from the sale or other disposition of all or any part of the foregoing, including insurance proceeds, whether now or hereafter existing.

For purposes hereof, the term "receivables" shall mean and include all of Grantor's present and future rights to payment for goods, merchandise or inventory sold or leased or for services rendered, including, without limitation, those which are not evidenced by instruments or chattel paper, and whether or not they have been earned by performance, whether or not the same are listed on any schedules, reports or assignments furnished to Lender from time to time, or any letters of credit on which Grantor is named as beneficiary, contract rights, chattel paper, instruments, documents, insurance proceeds, and all such obligations whatsoever owing to Grantor, together with all instruments and all documents of title representing any of the foregoing, all rights in any goods, merchandise or inventory which any of the same may represent, all rights in any returned or repossessed goods, merchandise and inventory, and all right, title, security and guaranties with respect to each of the foregoing, including, without limitation, any right of stoppage in transit, replevin and reclamation and all other rights and remedies of an unpaid vendor or lienor, and any liens held by Grantor as a mechanic, contractor, subcontractor, processor, materialman, machinist, manufacturer, artisan or otherwise.

2.    Grantor's Liabilities.

(a)    Payment of Indebtedness. The security interest created herein is given as additional security for: the payment to Lender of all indebtedness evidenced by and according to the terms of the Note, the Loan Agreement and the other Loan Documents; the payment of all sums hereafter loaned, paid out, expended or advanced by Lender under the terms of this Agreement, together with interest thereon; all extensions, increases, or renewals of the Note, the Loan Agreement and the other Loan Documents evidencing sums hereafter loaned, paid out, expended or advanced by Lender, its successors or assigns, to or for the account of Borrower; the discharge and performance of all agreements and obligations under each of the Note, the Loan Agreement and the other Loan Documents; and the payment of any other debt obligations that Borrower may heretofore or hereafter agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender (all of the foregoing are hereinafter collectively called the "Indebtedness").

(b)    Protection of Collateral. Grantor shall take any and all steps required in the reasonable judgment of Lender to protect the Collateral and in pursuance thereof Grantor agrees that the tangible Collateral:

7CV4595.DOCX

(i) Shall be kept at Grantor's facility located at 3320 S. Outer Belt Road, Grain Valley, Missouri 64029 or at some other location agreed to by Lender in writing, and shall be used only in the ordinary course of the Grantor's business and the operation thereof;

(ii) Shall not be misused, wasted or allowed to deteriorate, except for the ordinary wear and tear resulting from its use, as aforesaid;

(iii) To the extent insurable, shall at all times be insured against loss, damage, theft and such other risks as Lender may require in such amounts, with such companies, with such deductibles, under such policies, in such form and for such periods as shall be satisfactory to Lender, and each such policy shall provide that the loss thereunder and the proceeds payable thereunder shall be payable to Lender as its interest may appear, and any proceeds of such insurance which may be received by Lender shall be applied as required under the Loan Documents;

(iv) Shall not be used in violation of any applicable statute, law, rule, regulation or ordinance;

(v) Shall be kept and maintained in good operating condition and repair and Grantor shall make all necessary replacements thereof and renewals thereto so that the value and operating efficiency thereof shall at all times be maintained and preserved, except where the failure to so maintain and preserve would not have a material adverse effect on the business, financial conditions or operations of Grantor; and

(vi) With 24 hours prior notice, may be examined and inspected by Lender during regular business hours, wherever located.

(c) <u>Protection of Security Interest</u>. Grantor shall take any and all steps necessary to protect the priority of the security interest granted herein, and in pursuance of this obligation, Grantor agrees that:

(i) Grantor shall not sell, transfer, lease or otherwise dispose of any part of the Collateral or any interest therein or offer to do so, except in the ordinary course of business of Grantor, without the prior written consent of Lender, which shall not be unreasonably withheld, conditioned or delayed, or permit anything to be done that may impair the value of any of the Collateral or the security intended to be afforded by this Agreement.

(ii) Grantor will comply with all applicable statutes and governmental regulations and pay and discharge, when due, before any penalty attaches thereto for nonpayment thereof, all taxes, assessments and governmental charges of any kind now or hereafter levied upon or assessed against Grantor, the Collateral, any income therefrom or upon the subject of the security interest of Lender; provided, however, that Grantor shall not be required to pay any such taxes, assessments, or other governmental charges so long as Grantor shall in good faith contest the validity thereof, and if such contest is made, Grantor will provide for the payment of the taxes, assessments or other governmental charges so contested. In the event Grantor, at any time, fails to pay such taxes, assessments and charges, or to obtain

7CV4595.DOCX

Force Midwest LLC <i>et. al</i><br>Mulungas Security Agreement – Page 4

discharges, subject to the provision of the preceding sentence relative to contesting such items, Grantor shall so advise Lender thereof in writing and Lender may, in its sole discretion, without waiving or releasing any of Grantor's obligations to Lender or liability of Grantor or any Event of Default, make such payment, or any part thereof, or obtain such discharge or take other action with respect thereto which Lender deems advisable.  All sums so paid by Lender and any expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorneys' fees, shall be immediately due and payable from Grantor to Lender.

(iii)     Grantor hereby authorizes Lender to record a financing statement or statements necessary to perfect Lender's security interest in the Collateral, and pay all costs and fees associated with filing such financing statement or statements.  Grantor shall sign and execute alone or with Lender any other document or procure any documents and pay all connected costs, expenses and fees, including, without limitation, reasonable attorney's fees, necessary to protect the security interest under this Agreement against the rights, interests or claims of third persons;

(iv)     Grantor shall reimburse Lender for all reasonable costs, expenses and fees, including, without limitation, court costs and reasonable attorney's fees, incurred for any action taken by Lender to remedy a default of Grantor under this Agreement;

(v)     Grantor hereby authorizes Lender to file any financing statement in the future necessary to fully perfect the security interest created herein, and Grantor shall (A) from time to time promptly execute and deliver to Lender all such other assignments, certificates, supplemental writings and other document, and do all other acts or things as Lender may reasonably request in order to more fully evidence and perfect the security interest created herein; (B) punctually and properly perform all of Grantor's agreements and obligations under this Agreement, the Note, the Loan Agreement and the other Loan Documents and under any other security agreement, mortgage, deed of trust, collateral pledge, agreement or contract of any kind now or hereafter existing as security for and in connection with payment of the Indebtedness, or any part thereof; (C) pay the Indebtedness in accordance with the terms thereof and in accordance with the terms of this Agreement, the Note, the Loan Agreement and the other Loan Documents or other writings evidencing the Indebtedness, or any part thereof; (D) promptly furnish Lender with any information or writings which Lender may reasonably request concerning the Collateral; (E) allow Lender to inspect all records of Grantor relating to the Collateral, the Indebtedness and the business and operation of Grantor, and to make and take away copies of such records; (F) promptly notify Lender of any change in any facts or circumstances warranted or represented by Grantor in this Agreement or in any other writing furnished by Grantor to Lender in connection with the Collateral, the Indebtedness and the business and operation of Grantor; (G) promptly notify Lender of any claim, action or proceeding affecting title to the Collateral, or any part thereof, or the security interest created herein, and, at the request of Lender, appear in and defend, at Grantor's sole cost and expense, any such action or proceeding; and (H) promptly, after being requested by Lender, pay to Lender the amount of all reasonable expenses, including, without limitation, reasonable attorney's fees, court costs and other legal expenses, incurred by Lender in enforcing the security interest created herein;

7CV4595.DOCX

(vi)    Grantor shall not, without the prior written consent of Lender: create any other security interest in, mortgage, pledge, or otherwise encumber the Collateral, or any part thereof, or permit the same to be or become subject to any lien, attachment, execution, sequestration, other legal or equitable process, or any encumbrance of any kind or character;

(vii)    Should the Collateral, or any part thereof ever be in any manner converted by its issuer or maker into another type of property or any money or other proceeds ever be paid or delivered to Grantor as a result of Grantor's rights in the Collateral, then, in any such event, all such property, money and other proceeds shall become part of the Collateral, and Grantor covenants to forthwith pay or deliver to Lender all of the same which is susceptible of delivery and, at the same time, if Lender deems it necessary and so requests, Grantor will properly endorse or assign the same.  With respect to any of such property of a kind requiring any additional security agreement, financing statement or other writing to perfect a security interest therein in favor of Lender, Grantor will forthwith execute and deliver to Lender whatever Lender shall reasonably deem necessary or proper for such purpose; and

(viii)    In the event that Grantor fails to perform any covenant, duty or agreement of Grantor to be performed in accordance with its terms hereunder, Lender may, but shall never be obligated to, perform or attempt to perform such covenant, duty or agreement on behalf of Grantor, and any reasonable amount expended by Lender in such performance or attempted performance shall become a part of the Indebtedness, and, at the request of Lender, Grantor agrees to pay such amount promptly to Lender at Lender's address set forth opposite its name below, or at such other place as Lender may designate, together with interest thereon at the "Default Rate" (as such term is defined in the Apex Line of Credit Note) from the date of such expenditure by Lender until paid.

3.    <u>Default</u>. The occurrence of any one or more of the following shall be an "Event of Default" for purposes of this Agreement (subject to any applicable cure periods set forth in the Loan Documents if no applicable cure period is set forth herein):

(a)    <u>Failure to Pay</u>: The Borrower's failure to pay when due any sums owed by Borrower to Lender under the Note or any other obligation owed by Borrower to Lender;

(b)    <u>Untrue Representations and Warranties</u>: The breach of any of the representations or warranties of Grantor as set forth in this Agreement in any material respect;

(c)    <u>Non-performance of Grantor's Liabilities</u>: If any default shall occur in the due and punctual performance of or compliance with any of the terms, covenants, conditions or agreements contained herein (other than as described in any other provision of this Section) and shall not have been cured within any applicable notice and cure period;

(d)    <u>Assignment for Benefit of Creditors</u>: The execution of an assignment for the benefit of creditors by Borrower or the filing of a petition for relief under the United States Bankruptcy Code, whether voluntary or involuntary;

7CV4595.DOCX

(e)     Process Against the Collateral: The levy of any execution, attachment, sequestration or other writ against the Collateral or any part thereof not dismissed within sixty (60) days after such levy; or

(f)     Default under Loan Documents: The occurrence of any Event of Default under any of the other Loan Documents.

4.     Consequences of Default. Upon the occurrence of any such Event of Default, and expiration of any applicable cure periods provided in the Loan Documents, Lender may, at its option, declare all Indebtedness secured hereby to be immediately due and payable to Lender without demand or notice of any kind whatsoever, and such Indebtedness thereupon shall immediately become due and payable to Lender without demand or notice, but with such adjustments, if any, with respect to interest or other charges as may be provided for herein or in the Note, the Loan Agreement, the other Loan Documents or any other written agreements between Borrower and Lender.

5.     Lender's Rights and Remedies. Lender shall have available to it the following rights and remedies:

(a)     Right to Assign. Lender may assign this Agreement, and if Lender does assign this Agreement, the assignee shall be entitled to the performance of all of Grantor's agreements and obligations under this Agreement, and the assignee shall be entitled to all the rights and remedies of Lender under this Agreement.

(b)     Right to Discharge Grantor's Liabilities. Lender may, at its option, discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral, may remedy or cure any default of Grantor under the terms of any lease, rental agreement or other document which in any way pertains to or affects Grantor's title to or interest in any of the Collateral, may pay for insurance on the Collateral, and may pay for the maintenance and preservation of the Collateral, and Grantor agrees to reimburse Lender, on demand, for any payment made or any reasonable expense incurred by Lender, including, without limitation, attorney's fees, pursuant to the foregoing authorization, together with interest at the Default Rate from the date so paid or incurred by Lender, which payments, expenses and interest shall be secured by the security intended to be afforded by this Agreement and/or by the Loan Agreement and the other Loan Documents. In the event Lender makes any payment or incurs any expenses pursuant to this Section 5 (b), Lender shall provide Grantor a statement setting forth all such payments made or expenses incurred.

(c)     Right of Enforcement. Lender shall have and may exercise any and all rights of enforcement and remedies before or after default afforded to a Lender under the UCC, together with any and all other rights and remedies otherwise provided and available to Lender at law or in equity as of the date of this Agreement or the date of Grantor's default; and, in conjunction with, in addition to, or substitution for those rights and remedies, at Lender's discretion, Lender may:

7CV4595.DOCX

(i) To the extent permitted by law, enter upon Grantor's premises to take possession of, assemble and collect the Collateral or to render it or any portion of the Collateral unusable; and/or

(ii) Remedy any default in any reasonable manner, without waiving its rights and remedies upon default and without waiving any other prior or subsequent default.

(d) <u>Right of Sale</u>.

(i) Grantor agrees that following an Event of Default, after expiration of any applicable notice and cure periods, Lender may, at its option, sell or dispose of the Collateral at public or private sale without any previous demand of performance or notice to Grantor of any such sale whatsoever, except as provided under the UCC, and from the proceeds of sale retain: (A) all costs and charges incurred by Lender in taking and causing the removal and sale of said property, including such reasonable attorney's fees as shall have been incurred by Lender; and (B) all sums due pursuant to the Note, the Loan Agreement, the other Loan Documents and this Agreement, and all accrued interest thereon. Any surplus of such proceeds remaining shall be paid to Grantor.

(ii) At any sale or sales made pursuant to this Agreement or in a suit to foreclose the same, the Collateral may be sold in masse or separately, at the same or at different times, at the option of Lender or its assigns. Such sale may be public or private, with notice as required by the UCC, and the Collateral need not be present at the time or place of sale. At any such sale, Lender or the holder of the Note hereby secured may bid for and purchase any of the property sold, notwithstanding that such sale is conducted by Lender or its attorneys, agents, or assigns, and no irregularity in the manner of sale or of giving notice shall operate to preclude Lender from recovering the Indebtedness.

(iii) If any notification of intended sale or other disposition of the Collateral or any part thereof is required under the UCC or other law, such notification, if mailed, shall be deemed reasonably and properly given if mailed to Grantor at least ten (10) days before such sale or disposition.

(e) <u>Power of Attorney</u>. Grantor hereby authorizes Lender to make, constitute and appoint any officer or agent of Lender, as Lender may select in the Lender's sole discretion, as Grantor's true and lawful attorney-in-fact, with power (i) to endorse Grantor's name on all applications, documents, papers and instruments necessary or desirable for the Lender to protect its security interest in the Collateral, (ii) from and after the occurrence of any Event of Default (after any applicable grace or cure periods) in accordance with this Agreement and applicable law, (y) to assign, pledge, convey or otherwise transfer title in or dispose of the Collateral to anyone, and (z) to enforce or use the patents or trademarks or to grant or issue any exclusive or non-exclusive license under the patents or trademarks to any third party, or to sell, assign, transfer, pledge, encumber or otherwise transfer title in or dispose of the patents or trademarks to any third party. This power of attorney shall be irrevocable until all of the Indebtedness has been paid in full and all of the financing arrangements between Grantor and Lender have been terminated and Lender has no further obligation to make loans to Grantor.

7CV4595.DOCX

(f)     Miscellaneous. Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times. The failure of Lender at any time or times to enforce its rights under said provisions strictly in accordance with the same shall not be construed or operate as a waiver of any of the rights and remedies granted Lender hereunder or as having created a custom in any way or manner contrary to the specific provisions of this Agreement or as having in any way or manner modified the same. All rights and remedies of Lender are cumulative and concurrent, and the exercise of one right or remedy by Lender shall not be deemed a waiver or release of any other right or remedy. Except as otherwise specifically required herein, notice of the exercise of any right, remedy or power granted to Lender by this Agreement is not required to be given.

6.     Representations and Warranties. Grantor represents and warrants that:

(a)     Grantor has authority to execute and deliver this Agreement;

(b)     Except for those financing statements filed of record in the office of the Missouri Secretary of State as of the date of this Agreement with respect to security interests approved by Lender (the "Permitted Liens"), as of the date hereof, no financing statement covering the Collateral, or any part thereof, has been filed with any filing officer;

(c)     Except for the Permitted liens, the Collateral is free and clear of all liens and encumbrances, and, as of the date hereof, no other security agreement covering the Collateral, or any part thereof, has been made and no security interest, other than the one herein created, has attached or been perfected in the Collateral or in any part thereof;

(d)     No dispute, right of set-off, counterclaim or defenses exist with respect to any part of the Collateral;

(e)     All information supplied and statements made in any financial or credit statement or application for credit heretofore delivered to Lender by or on behalf of Grantor or any guarantor of the Note prior to the execution of this Agreement are true and correct in all material respects as of the date hereof; and

(f)     At the time Lender's security interest created herein and/or by virtue of any of the other Loan Documents attaches to any of the Collateral or its proceeds, Grantor will be the lawful owner with the right to transfer any interest therein, and Grantor will make such further assurances so as to prove title to the Collateral in Grantor as may be required and will defend the Collateral and its proceeds against the lawful claims and demands of all persons whomsoever.

The delivery at any time by Grantor to Lender of the Collateral shall constitute a representation and warranty by Grantor under this Agreement that, with respect to such Collateral, and each item thereof, Grantor is the owner of the Collateral and the matters heretofore represented and warranted in this Paragraph 6 are true, complete and correct. Further,

7CV4595.DOCX

Grantor, at the request of Lender, agrees to amend this Agreement and any and all financing statements filed in connection therewith for the purpose of setting forth in said Agreement and said financing statements an accurate and itemized list, when known, of the Collateral now generally described herein and in said financing statements and to include in said accurate and itemized list an identification of the Collateral by make, model, serial number and other appropriate descriptive data.

7.    <u>Mutual Agreements</u>.  Grantor and Lender mutually agree as follows:

(a)    "Grantor" and "Lender" as used in this Agreement include the successors and permitted assigns of those parties.

(b)    This Agreement includes all amendments and supplements thereto and all assignments thereof. This Agreement shall not be amended, modified or supplemented without the written agreement of Grantor and Lender at the time of such amendment, modification or supplement.

(c)    It is expressly intended, understood and agreed that this Agreement, the Note, the Loan Agreement and the other Loan Documents are made and entered into for the sole protection and benefit of the parties thereto, and their respective successors and assigns (but in the case of assigns of Grantor or Borrower, only to the extent permitted under the Loan Documents), and no other person or persons shall have any right of action hereunder or rights to the Loan proceeds at any time; that the Loan proceeds do not constitute a trust fund for the benefit of any third party; that no third party shall under any circumstances be entitled to any equitable lien on any undisbursed Loan proceeds at any time; and that Lender shall have a lien upon and right to direct application of any undisbursed Loan proceeds as additional security for this Agreement, the Note, the Loan Agreement and the other Loan Documents. The relationship between Lender and Borrower is solely that of a lender and borrower, and nothing contained herein, or in the Note, the Loan Agreement or the other Loan Documents shall in any manner be construed as making the parties hereto partners, joint venturers or creating any other relationship other than lender and borrower.

(d)    This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri. All provisions of this Agreement shall be deemed valid and enforceable to the extent permitted by law. Any provision or provisions of this Agreement which are held unenforceable, invalid or contrary to law by a court of competent jurisdiction, or the inclusion of which would affect the validity or enforceability of this Agreement, shall be of no force or effect, and in such event each and all of the remaining provisions of this Agreement shall subsist and remain and be fully effective according to the tenor of this Agreement as though such invalid, unenforceable or unlawful provision or provisions had not been included in this Agreement.

(e)    To the extent permitted by law, Grantor hereby waives any and all rights to require marshalling of assets by Lender.

7CV4595.DOCX

(f)   Any and all notices given in connection with this Agreement shall be delivered in accordance with the procedures set forth in the Loan Agreement.

(g)   Grantor hereby agrees that no liability shall be asserted or enforced by Grantor against Lender in its exercise of the powers and rights herein granted, all such liability being hereby expressly waived and released by Grantor.  Grantor hereby agrees to indemnify, defend and hold Lender harmless from and against any and all liability, expense, cost or damage which may be incurred by, asserted against or imposed upon Lender at any time which relates to or arises from the use, operation or lease of any of the Collateral or the exercise by Lender of the powers and rights herein granted.

(h)   This Agreement shall inure to the benefit of Lender, its successors and assigns and shall be binding upon Grantor and its successors and permitted assigns.

(i)   Lender is hereby authorized to rely upon and accept as an original this Agreement or any communication which is sent to the Lender by facsimile, telegraphic or other electronic transmission (each, a "Communication") which the Lender in good faith believes has been signed by Grantor and has been delivered to Lender by a properly authorized representative of the Grantor, whether or not that is in fact the case.  Notwithstanding the foregoing, Lender shall not be obligated to accept any such Communication as an original and may in any instance require that an original document be submitted to the Lender in lieu of, or in addition to, any such Communication.

(j)   Should this Agreement be signed by more than one party, all obligations contained shall be deemed to be the joint and several obligations of each party executing this Security Agreement.

(k)   This Agreement may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document.  An electronic transmission or other facsimile of this Agreement or any of the Loan Documents shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

8.   Venue.  Venue for any action arising pursuant to or to enforce any provision of this Agreement shall be exclusively found in the Circuit Court of Jackson County, Missouri.  Grantor hereby submits to the jurisdiction of the Circuit Court of Jackson County, Missouri.

9.   Waiver of Jury Trail.  **GRANTOR WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GRANTOR AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.**

7CV4595.DOCX

THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GRANTOR, AND GRANTOR HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. GRANTOR AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS DOCUMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GRANTOR TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

7CV4595.DOCX

IN WITNESS WHEREOF, Grantor and Lender have caused this Security Agreement to be executed by their duly authorized officer, manager, or representative as of the date set forth below.

**"GRANTOR"**

**MULUNGAS, LLC,** a Missouri
limited liability company

By: _____                    Date: _12/2/19_
    Brad Carlson, Sole Member

**"LENDER"**

**ENTERPRISE BANK & TRUST**

By: _____                    Date: _12/2/19_
    Aaron Wiens, Vice President

7CV4595.DOCX

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is made effective December 2, 2019 by **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Grantor"), with a mailing address of 3320 S. Outer Belt Road, Grain Valley, Missouri 64029, to and for the benefit of **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender"), with a mailing address of 12695 Metcalf Avenue, Overland Park, Kansas 66213.

## R E C I T A L S:

A.    Grantor and **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Force") **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MULUNGAS, LLC,** a Missouri limited liability company ('Mulungas") and **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Mid-Western" and together with Grantor, Force, Apex, MAG, and Mulungas collectively herein "Borrower") have executed and delivered to Lender that certain Business Loan Agreement (the "Loan Agreement") dated of even date herewith under the terms of which Lender has agreed to make the following loans: (i) a loan to and for Borrower in the original principal amount of **ONE MILLION and 00/100THS DOLLARS ($1,000,000.00)** (the "Apex Line of Credit Loan"), (ii) a loan to and for Borrower in the original principal amount of **TWO MILLION and 00/100THS DOLLARS ($2,000,000.00)** (the "MAG Line of Credit Loan"), (iii) a loan to and for Borrower in the original principal amount of **SIX HUNDRED SIXTY-TWO THOUSAND NINE HUNDRED FOURTEEN and 00/100THS DOLLARS ($662,914.00)** (the "Apex Term Loan"), and (iv) a loan to and for Borrower in the original principal amount of **TWO MILLION EIGHT HUNDRED THIRTY-TWO THOUSAND and 00/100THS DOLLARS ($2,832,000.00)** (the "Mulungas Term Loan").

B.    (i) The Apex Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$1,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "Apex Line of Credit Note"), (ii) the  MAG Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "MAG Line of Credit Note"), (iii) the Apex Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$662,914.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Apex Term Note"), and (iv) the Mulungas Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,832,000.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Mulugas Term Note").

C.    For purposes of this Agreement the following definitions apply:

(i)    the Apex Line of Credit Loan, the MAG Line of Credit Loan, the Apex

Term Loan, and the Mulungas Term Loan are collectively referred to herein as the "Loan";

(ii)     the Apex Line of Credit Note, the MAG Line of Credit Note, the Apex Term Note, and the Mulungas Term Note are collectively referred to herein as the "Note"; and

(iii)     all capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement.

**C.**     Grantor is willing, on the terms and conditions contained herein, in the Loan Agreement, in the Note and in the other Loan Documents (as defined in the Loan Agreement), to secure Grantor's obligations under the Note and the other Loan Documents.

**D.**     Lender has required as a condition to making credit available to Borrower under the terms of the Note and the Loan Agreement that Grantor secure Borrower's obligations to Lender with certain assets of the Grantor.

NOW THEREFORE, for and in consideration of the making of the Loan and the extensions of credit as contemplated under the Loan Agreement and as an inducement to Lender to do so, and for and in consideration of the mutual promises, covenants and agreements hereinafter set forth, Grantor and Lender hereby agree as follows:

1.     <u>Creation of Security Interest</u>.  Grantor hereby grants to Lender a lien on and security interest in and does hereby collaterally assign, pledge, mortgage, convey and set over unto Lender all of the assets of Grantor including, without limitation, the following whether now owned or hereafter acquired by or on behalf of Grantor (hereinafter referred to collectively as the "Collateral"):

A.     All inventory of Grantor including Grantor's raw materials, work in progress, finished goods, merchandise, parts and supplies, goods held for sale or lease or furnished under contracts of service in which Grantor now has or hereafter acquires any right, and all documents of title, warehouse receipts, bills of lading, and all other documents of every type covering the forgoing;

B.     All accounts, including trade accounts, account receivable, other receivables, or other right to payment for goods or services rendering owing to Grantor, amounts due from credit card payments, leases, rents, and license fees, and other rights to receive the payment of money;

C.     All deposit accounts, including the Primary Deposit Account, deposits, monies, contract rights, documents, instruments, general intangibles, chattel paper, securities accounts, brokerage accounts (excluding all IRA and Keogh accounts) as those terms are defined in the Uniform Commercial Code ("UCC");

D     All investment property and securities and Grantor's rights to receive distributions, dividends, or other benefits of ownership of all entities in which Grantor is a member;

7CV5000.DOCX

E.  All general intangibles of any kind including patents, trademarks, copyrights, trade names, created software, and licenses;

F.  All machinery, equipment, furniture, fixtures, furnishings, tools, software, and supplies; and

G.  All additions, accessions, modifications, improvements, replacements, and substitutions of any of the foregoing as well as all proceeds, whether cash, promissory notes, and other property, real or personal or otherwise, resulting from the sale or other disposition of all or any part of the foregoing, including insurance proceeds, whether now or hereafter existing.

For purposes hereof, the term "receivables" shall mean and include all of Grantor's present and future rights to payment for goods, merchandise or inventory sold or leased or for services rendered, including, without limitation, those which are not evidenced by instruments or chattel paper, and whether or not they have been earned by performance, whether or not the same are listed on any schedules, reports or assignments furnished to Lender from time to time, or any letters of credit on which Grantor is named as beneficiary, contract rights, chattel paper, instruments, documents, insurance proceeds, and all such obligations whatsoever owing to Grantor, together with all instruments and all documents of title representing any of the foregoing, all rights in any goods, merchandise or inventory which any of the same may repre-sent, all rights in any returned or repossessed goods, merchandise and inventory, and all right, title, security and guaranties with respect to each of the foregoing, including, without limitation, any right of stoppage in transit, replevin and reclamation and all other rights and remedies of an unpaid vendor or lienor, and any liens held by Grantor as a mechanic, contractor, subcontractor, processor, materialman, machinist, manufacturer, artisan or otherwise.

2.  <u>Grantor's Liabilities</u>.

(a)  <u>Payment of Indebtedness</u>. The security interest created herein is given as additional security for: the payment to Lender of all indebtedness evidenced by and according to the terms of the Note, the Loan Agreement and the other Loan Documents; the payment of all sums hereafter loaned, paid out, expended or advanced by Lender under the terms of this Agreement, together with interest thereon; all extensions, increases, or renewals of the Note, the Loan Agreement and the other Loan Documents evidencing sums hereafter loaned, paid out, expended or advanced by Lender, its successors or assigns, to or for the account of Borrower; the discharge and performance of all agreements and obligations under each of the Note, the Loan Agreement and the other Loan Documents; and the payment of any other debt obligations that Borrower may heretofore or hereafter agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender (all of the foregoing are hereinafter collectively called the "Indebtedness").

(b)  <u>Protection of Collateral</u>.  Grantor shall take any and all steps required in the reasonable judgment of Lender to protect the Collateral and in pursuance thereof Grantor agrees that the tangible Collateral:

7CV5000.DOCX

(i)     Shall be kept at Grantor's facility located at 3320 S. Outer Belt Road, Grain Valley, Missouri 64029 or at some other location agreed to by Lender in writing, and shall be used only in the ordinary course of the Grantor's business and the operation thereof;

(ii)    Shall not be misused, wasted or allowed to deteriorate, except for the ordinary wear and tear resulting from its use, as aforesaid;

(iii)   To the extent insurable, shall at all times be insured against loss, damage, theft and such other risks as Lender may require in such amounts, with such companies, with such deductibles, under such policies, in such form and for such periods as shall be satisfactory to Lender, and each such policy shall provide that the loss thereunder and the proceeds payable thereunder shall be payable to Lender as its interest may appear, and any proceeds of such insurance which may be received by Lender shall be applied as required under the Loan Documents;

(iv)    Shall not be used in violation of any applicable statute, law, rule, regulation or ordinance;

(v)     Shall be kept and maintained in good operating condition and repair and Grantor shall make all necessary replacements thereof and renewals thereto so that the value and operating efficiency thereof shall at all times be maintained and preserved, except where the failure to so maintain and preserve would not have a material adverse effect on the business, financial conditions or operations of Grantor; and

(vi)    With 24 hours prior notice, may be examined and inspected by Lender during regular business hours, wherever located.

(c)     <u>Protection of Security Interest</u>.  Grantor shall take any and all steps necessary to protect the priority of the security interest granted herein, and in pursuance of this obligation, Grantor agrees that:

(i)     Grantor shall not sell, transfer, lease or otherwise dispose of any part of the Collateral or any interest therein or offer to do so, except in the ordinary course of business of Grantor, without the prior written consent of Lender, which shall not be unreasonably withheld, conditioned or delayed, or permit anything to be done that may impair the value of any of the Collateral or the security intended to be afforded by this Agreement.

(ii)    Grantor will comply with all applicable statutes and governmental regulations and pay and discharge, when due, before any penalty attaches thereto for nonpayment thereof, all taxes, assessments and governmental charges of any kind now or hereafter levied upon or assessed against Grantor, the Collateral, any income therefrom or upon the subject of the security interest of Lender; provided, however, that Grantor shall not be required to pay any such taxes, assessments, or other governmental charges so long as Grantor shall in good faith contest the validity thereof, and if such contest is made, Grantor will provide for the payment of the taxes, assessments or other governmental charges so contested.  In the event Grantor, at any time, fails to pay such taxes, assessments and charges, or to obtain

7CV5000.DOCX

discharges, subject to the provision of the preceding sentence relative to contesting such items, Grantor shall so advise Lender thereof in writing and Lender may, in its sole discretion, without waiving or releasing any of Grantor's obligations to Lender or liability of Grantor or any Event of Default, make such payment, or any part thereof, or obtain such discharge or take other action with respect thereto which Lender deems advisable. All sums so paid by Lender and any expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorneys' fees, shall be immediately due and payable from Grantor to Lender.

(iii)    Grantor hereby authorizes Lender to record a financing statement or statements necessary to perfect Lender's security interest in the Collateral, and pay all costs and fees associated with filing such financing statement or statements. Grantor shall sign and execute alone or with Lender any other document or procure any documents and pay all connected costs, expenses and fees, including, without limitation, reasonable attorney's fees, necessary to protect the security interest under this Agreement against the rights, interests or claims of third persons;

(iv)    Grantor shall reimburse Lender for all reasonable costs, expenses and fees, including, without limitation, court costs and reasonable attorney's fees, incurred for any action taken by Lender to remedy a default of Grantor under this Agreement;

(v)    Grantor hereby authorizes Lender to file any financing statement in the future necessary to fully perfect the security interest created herein, and Grantor shall (A) from time to time promptly execute and deliver to Lender all such other assignments, certificates, supplemental writings and other document, and do all other acts or things as Lender may reasonably request in order to more fully evidence and perfect the security interest created herein; (B) punctually and properly perform all of Grantor's agreements and obligations under this Agreement, the Note, the Loan Agreement and the other Loan Documents and under any other security agreement, mortgage, deed of trust, collateral pledge, agreement or contract of any kind now or hereafter existing as security for and in connection with payment of the Indebtedness, or any part thereof; (C) pay the Indebtedness in accordance with the terms thereof and in accordance with the terms of this Agreement, the Note, the Loan Agreement and the other Loan Documents or other writings evidencing the Indebtedness, or any part thereof; (D) promptly furnish Lender with any information or writings which Lender may reasonably request concerning the Collateral; (E) allow Lender to inspect all records of Grantor relating to the Collateral, the Indebtedness and the business and operation of Grantor, and to make and take away copies of such records; (F) promptly notify Lender of any change in any facts or circumstances warranted or represented by Grantor in this Agreement or in any other writing furnished by Grantor to Lender in connection with the Collateral, the Indebtedness and the business and operation of Grantor; (G) promptly notify Lender of any claim, action or proceeding affecting title to the Collateral, or any part thereof, or the security interest created herein, and, at the request of Lender, appear in and defend, at Grantor's sole cost and expense, any such action or proceeding; and (H) promptly, after being requested by Lender, pay to Lender the amount of all reasonable expenses, including, without limitation, reasonable attorney's fees, court costs and other legal expenses, incurred by Lender in enforcing the security interest created herein;

7CV5000.DOCX

(vi)     Grantor shall not, without the prior written consent of Lender: create any other security interest in, mortgage, pledge, or otherwise encumber the Collateral, or any part thereof, or permit the same to be or become subject to any lien, attachment, execution, sequestration, other legal or equitable process, or any encumbrance of any kind or character;

(vii)    Should the Collateral, or any part thereof ever be in any manner converted by its issuer or maker into another type of property or any money or other proceeds ever be paid or delivered to Grantor as a result of Grantor's rights in the Collateral, then, in any such event, all such property, money and other proceeds shall become part of the Collateral, and Grantor covenants to forthwith pay or deliver to Lender all of the same which is susceptible of delivery and, at the same time, if Lender deems it necessary and so requests, Grantor will properly endorse or assign the same.  With respect to any of such property of a kind requiring any additional security agreement, financing statement or other writing to perfect a security interest therein in favor of Lender, Grantor will forthwith execute and deliver to Lender whatever Lender shall reasonably deem necessary or proper for such purpose; and

(viii)   In the event that Grantor fails to perform any covenant, duty or agreement of Grantor to be performed in accordance with its terms hereunder, Lender may, but shall never be obligated to, perform or attempt to perform such covenant, duty or agreement on behalf of Grantor, and any reasonable amount expended by Lender in such performance or attempted performance shall become a part of the Indebtedness, and, at the request of Lender, Grantor agrees to pay such amount promptly to Lender at Lender's address set forth opposite its name below, or at such other place as Lender may designate, together with interest thereon at the "Default Rate" (as such term is defined in the Apex Line of Credit Note) from the date of such expenditure by Lender until paid.

3.     Default. The occurrence of any one or more of the following shall be an "Event of Default" for purposes of this Agreement (subject to any applicable cure periods set forth in the Loan Documents if no applicable cure period is set forth herein):

(a)     Failure to Pay: The Borrower's failure to pay when due any sums owed by Borrower to Lender under the Note or any other obligation owed by Borrower to Lender;

(b)     Untrue Representations and Warranties: The breach of any of the representations or warranties of Grantor as set forth in this Agreement in any material respect;

(c)     Non-performance of Grantor's Liabilities: If any default shall occur in the due and punctual performance of or compliance with any of the terms, covenants, conditions or agreements contained herein (other than as described in any other provision of this Section) and shall not have been cured within any applicable notice and cure period;

(d)     Assignment for Benefit of Creditors: The execution of an assignment for the benefit of creditors by Borrower or the filing of a petition for relief under the United States Bankruptcy Code, whether voluntary or involuntary;

7CV5000.DOCX

(e)    Process Against the Collateral:  The levy of any execution, attachment, sequestration or other writ against the Collateral or any part thereof not dismissed within sixty (60) days after such levy; or

(f)    Default under Loan Documents:  The occurrence of any Event of Default under any of the other Loan Documents.

4.    Consequences of Default.  Upon the occurrence of any such Event of Default, and expiration of any applicable cure periods provided in the Loan Documents, Lender may, at its option, declare all Indebtedness secured hereby to be immediately due and payable to Lender without demand or notice of any kind whatsoever, and such Indebtedness thereupon shall immediately become due and payable to Lender without demand or notice, but with such adjustments, if any, with respect to interest or other charges as may be provided for herein or in the Note, the Loan Agreement, the other Loan Documents or any other written agreements between Borrower and Lender.

5.    Lender's Rights and Remedies. Lender shall have available to it the following rights and remedies:

(a)    Right to Assign.  Lender may assign this Agreement, and if Lender does assign this Agreement, the assignee shall be entitled to the performance of all of Grantor's agreements and obligations under this Agreement, and the assignee shall be entitled to all the rights and remedies of Lender under this Agreement.

(b)    Right to Discharge Grantor's Liabilities.  Lender may, at its option, discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral, may remedy or cure any default of Grantor under the terms of any lease, rental agreement or other document which in any way pertains to or affects Grantor's title to or interest in any of the Collateral, may pay for insurance on the Collateral, and may pay for the maintenance and preservation of the Collateral, and Grantor agrees to reimburse Lender, on demand, for any payment made or any reasonable expense incurred by Lender, including, without limitation, attorney's fees, pursuant to the foregoing authorization, together with interest at the Default Rate from the date so paid or incurred by Lender, which payments, expenses and interest shall be secured by the security intended to be afforded by this Agreement and/or by the Loan Agreement and the other Loan Documents. In the event Lender makes any payment or incurs any expenses pursuant to this Section 5 (b), Lender shall provide Grantor a statement setting forth all such payments made or expenses incurred.

(c)    Right of Enforcement.  Lender shall have and may exercise any and all rights of enforcement and remedies before or after default afforded to a Lender under the UCC, together with any and all other rights and remedies otherwise provided and available to Lender at law or in equity as of the date of this Agreement or the date of Grantor's default; and, in conjunction with, in addition to, or substitution for those rights and remedies, at Lender's discretion, Lender may:

7CV5000.DOCX

(i)    To the extent permitted by law, enter upon Grantor's premises to take possession of, assemble and collect the Collateral or to render it or any portion of the Collateral unusable; and/or

(ii)    Remedy any default in any reasonable manner, without waiving its rights and remedies upon default and without waiving any other prior or subsequent default.

(d)    Right of Sale.

(i)    Grantor agrees that following an Event of Default, after expiration of any applicable notice and cure periods, Lender may, at its option, sell or dispose of the Collateral at public or private sale without any previous demand of performance or notice to Grantor of any such sale whatsoever, except as provided under the UCC, and from the proceeds of sale retain: (A) all costs and charges incurred by Lender in taking and causing the removal and sale of said property, including such reasonable attorney's fees as shall have been incurred by Lender; and (B) all sums due pursuant to the Note, the Loan Agreement, the other Loan Documents and this Agreement, and all accrued interest thereon. Any surplus of such proceeds remaining shall be paid to Grantor.

(ii)    At any sale or sales made pursuant to this Agreement or in a suit to foreclose the same, the Collateral may be sold in masse or separately, at the same or at different times, at the option of Lender or its assigns. Such sale may be public or private, with notice as required by the UCC, and the Collateral need not be present at the time or place of sale. At any such sale, Lender or the holder of the Note hereby secured may bid for and purchase any of the property sold, notwithstanding that such sale is conducted by Lender or its attorneys, agents, or assigns, and no irregularity in the manner of sale or of giving notice shall operate to preclude Lender from recovering the Indebtedness.

(iii)    If any notification of intended sale or other disposition of the Collateral or any part thereof is required under the UCC or other law, such notification, if mailed, shall be deemed reasonably and properly given if mailed to Grantor at least ten (10) days before such sale or disposition.

(e)    Power of Attorney. Grantor hereby authorizes Lender to make, constitute and appoint any officer or agent of Lender, as Lender may select in the Lender's sole discretion, as Grantor's true and lawful attorney-in-fact, with power (i) to endorse Grantor's name on all applications, documents, papers and instruments necessary or desirable for the Lender to protect its security interest in the Collateral, (ii) from and after the occurrence of any Event of Default (after any applicable grace or cure periods) in accordance with this Agreement and applicable law, (y) to assign, pledge, convey or otherwise transfer title in or dispose of the Collateral to anyone, and (z) to enforce or use the patents or trademarks or to grant or issue any exclusive or non-exclusive license under the patents or trademarks to any third party, or to sell, assign, transfer, pledge, encumber or otherwise transfer title in or dispose of the patents or trademarks to any third party. This power of attorney shall be irrevocable until all of the Indebtedness has been paid in full and all of the financing arrangements between Grantor and Lender have been terminated and Lender has no further obligation to make loans to Grantor.

7CV5000.DOCX

(f)     Miscellaneous. Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times. The failure of Lender at any time or times to enforce its rights under said provisions strictly in accordance with the same shall not be construed or operate as a waiver of any of the rights and remedies granted Lender hereunder or as having created a custom in any way or manner contrary to the specific provisions of this Agreement or as having in any way or manner modified the same. All rights and remedies of Lender are cumulative and concurrent, and the exercise of one right or remedy by Lender shall not be deemed a waiver or release of any other right or remedy. Except as otherwise specifically required herein, notice of the exercise of any right, remedy or power granted to Lender by this Agreement is not required to be given.

6.     Representations and Warranties. Grantor represents and warrants that:

(a)     Grantor has authority to execute and deliver this Agreement;

(b)     Except for those financing statements filed of record in the office of the Missouri Secretary of State as of the date of this Agreement with respect to security interests approved by Lender (the "Permitted Liens"), as of the date hereof, no financing statement covering the Collateral, or any part thereof, has been filed with any filing officer;

(c)     Except for the Permitted liens, the Collateral is free and clear of all liens and encumbrances, and, as of the date hereof, no other security agreement covering the Collateral, or any part thereof, has been made and no security interest, other than the one herein created, has attached or been perfected in the Collateral or in any part thereof;

(d)     No dispute, right of set-off, counterclaim or defenses exist with respect to any part of the Collateral;

(e)     All information supplied and statements made in any financial or credit statement or application for credit heretofore delivered to Lender by or on behalf of Grantor or any guarantor of the Note prior to the execution of this Agreement are true and correct in all material respects as of the date hereof; and

(f)     At the time Lender's security interest created herein and/or by virtue of any of the other Loan Documents attaches to any of the Collateral or its proceeds, Grantor will be the lawful owner with the right to transfer any interest therein, and Grantor will make such further assurances so as to prove title to the Collateral in Grantor as may be required and will defend the Collateral and its proceeds against the lawful claims and demands of all persons whomsoever.

The delivery at any time by Grantor to Lender of the Collateral shall constitute a representation and warranty by Grantor under this Agreement that, with respect to such Collateral, and each item thereof, Grantor is the owner of the Collateral and the matters heretofore represented and warranted in this Paragraph 6 are true, complete and correct. Further,

7CV5000.DOCX

Force Midwest LLC *et. al*
Force Commercial Security Agreement – Page 9

Grantor, at the request of Lender, agrees to amend this Agreement and any and all financing statements filed in connection therewith for the purpose of setting forth in said Agreement and said financing statements an accurate and itemized list, when known, of the Collateral now generally described herein and in said financing statements and to include in said accurate and itemized list an identification of the Collateral by make, model, serial number and other appropriate descriptive data.

7.    Mutual Agreements. Grantor and Lender mutually agree as follows:

(a)    "Grantor" and "Lender" as used in this Agreement include the successors and permitted assigns of those parties.

(b)    This Agreement includes all amendments and supplements thereto and all assignments thereof. This Agreement shall not be amended, modified or supplemented without the written agreement of Grantor and Lender at the time of such amendment, modification or supplement.

(c)    It is expressly intended, understood and agreed that this Agreement, the Note, the Loan Agreement and the other Loan Documents are made and entered into for the sole protection and benefit of the parties thereto, and their respective successors and assigns (but in the case of assigns of Grantor or Borrower, only to the extent permitted under the Loan Documents), and no other person or persons shall have any right of action hereunder or rights to the Loan proceeds at any time; that the Loan proceeds do not constitute a trust fund for the benefit of any third party; that no third party shall under any circumstances be entitled to any equitable lien on any undisbursed Loan proceeds at any time; and that Lender shall have a lien upon and right to direct application of any undisbursed Loan proceeds as additional security for this Agreement, the Note, the Loan Agreement and the other Loan Documents. The relationship between Lender and Borrower is solely that of a lender and borrower, and nothing contained herein, or in the Note, the Loan Agreement or the other Loan Documents shall in any manner be construed as making the parties hereto partners, joint venturers or creating any other relationship other than lender and borrower.

(d)    This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri. All provisions of this Agreement shall be deemed valid and enforceable to the extent permitted by law. Any provision or provisions of this Agreement which are held unenforceable, invalid or contrary to law by a court of competent jurisdiction, or the inclusion of which would affect the validity or enforceability of this Agreement, shall be of no force or effect, and in such event each and all of the remaining provisions of this Agreement shall subsist and remain and be fully effective according to the tenor of this Agreement as though such invalid, unenforceable or unlawful provision or provisions had not been included in this Agreement.

(e)    To the extent permitted by law, Grantor hereby waives any and all rights to require marshalling of assets by Lender.

7CV5000.DOCX

(f)     Any and all notices given in connection with this Agreement shall be delivered in accordance with the procedures set forth in the Loan Agreement.

(g)     Grantor hereby agrees that no liability shall be asserted or enforced by Grantor against Lender in its exercise of the powers and rights herein granted, all such liability being hereby expressly waived and released by Grantor.  Grantor hereby agrees to indemnify, defend and hold Lender harmless from and against any and all liability, expense, cost or damage which may be incurred by, asserted against or imposed upon Lender at any time which relates to or arises from the use, operation or lease of any of the Collateral or the exercise by Lender of the powers and rights herein granted.

(h)     This Agreement shall inure to the benefit of Lender, its successors and assigns and shall be binding upon Grantor and its successors and permitted assigns.

(i)     Lender is hereby authorized to rely upon and accept as an original this Agreement or any communication which is sent to the Lender by facsimile, telegraphic or other electronic transmission (each, a "Communication") which the Lender in good faith believes has been signed by Grantor and has been delivered to Lender by a properly authorized representative of the Grantor, whether or not that is in fact the case.  Notwithstanding the foregoing, Lender shall not be obligated to accept any such Communication as an original and may in any instance require that an original document be submitted to the Lender in lieu of, or in addition to, any such Communication.

(j)     Should this Agreement be signed by more than one party, all obligations contained shall be deemed to be the joint and several obligations of each party executing this Security Agreement.

(k)     This Agreement may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document.  An electronic transmission or other facsimile of this Agreement or any of the Loan Documents shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

8.     <u>Venue</u>.  Venue for any action arising pursuant to or to enforce any provision of this Agreement shall be exclusively found in the Circuit Court of Jackson County, Missouri.  Grantor hereby submits to the jurisdiction of the Circuit Court of Jackson County, Missouri.

9.     <u>Waiver of Jury Trail.</u>  **GRANTOR WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GRANTOR AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.**

7CV5000.DOCX

**THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GRANTOR, AND GRANTOR HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. GRANTOR AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS DOCUMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GRANTOR TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.**

7CV5000.DOCX

IN WITNESS WHEREOF, Grantor and Lender have caused this Security Agreement to be executed by their duly authorized officer, manager, or representative as of the date set forth below.

**"GRANTOR"**

**FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company

By: _____       Date: _12/2/19_
     Brad Carlson, Manager

**"LENDER"**

**ENTERPRISE BANK & TRUST**

By: _____       Date: _12/2/19_
     Aaron Wiens, Vice President

7CV5000.DOCX

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is made effective December 2, 2019 by **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Grantor"), with a mailing address of 3320 S. Outer Belt Road, Grain Valley, Missouri 64029, to and for the benefit of **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender"), with a mailing address of 12695 Metcalf Avenue, Overland Park, Kansas 66213.

## R E C I T A L S:

A.      Grantor and **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MULUNGAS, LLC,** a Missouri limited liability company ("Mulungas"), **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Mid Western"), and **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Force Commercial" and together with Grantor, Apex, MAG, Mulungas, and Mid Western collectively herein "Borrower") have executed and delivered to Lender that certain Business Loan Agreement (the "Loan Agreement") dated of even date herewith under the terms of which Lender has agreed to make the following loans: (i) a loan to and for Borrower in the original principal amount of **ONE MILLION and 00/100THS DOLLARS ($1,000,000.00)** (the "Apex Line of Credit Loan"), (ii) a loan to and for Borrower in the original principal amount of **TWO MILLION and 00/100THS DOLLARS ($2,000,000.00)** (the "MAG Line of Credit Loan"), (iii) a loan to and for Borrower in the original principal amount of **SIX HUNDRED SIXTY-TWO THOUSAND NINE HUNDRED FOURTEEN and 00/100THS DOLLARS ($662,914.00)** (the "Apex Term Loan"), and (iv) a loan to and for Borrower in the original principal amount of **TWO MILLION EIGHT HUNDRED THIRTY-TWO THOUSAND and 00/100THS DOLLARS ($2,832,000.00)** (the "Mulungas Term Loan").

B.      (i) The Apex Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$1,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "Apex Line of Credit Note"), (ii) the MAG Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "MAG Line of Credit Note"), (iii) the Apex Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$662,914.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Apex Term Note"), and (iv) the Mulungas Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,832,000.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Mulugas Term Note").

C.      For purposes of this Agreement the following definitions apply:

(i)      the Apex Line of Credit Loan, the MAG Line of Credit Loan, the Apex

Term Loan, and the Mulungas Term Loan are collectively referred to herein as the "Loan";

(ii)  the Apex Line of Credit Note, the MAG Line of Credit Note, the Apex Term Note, and the Mulungas Term Note are collectively referred to herein as the "Note"; and

(iii)  all capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement.

**C.**  Grantor is willing, on the terms and conditions contained herein, in the Loan Agreement, in the Note and in the other Loan Documents (as defined in the Loan Agreement), to secure Grantor's obligations under the Note and the other Loan Documents.

**D.**  Lender has required as a condition to making credit available to Borrower under the terms of the Note and the Loan Agreement that Grantor secure Borrower's obligations to Lender with certain assets of the Grantor.

NOW THEREFORE, for and in consideration of the making of the Loan and the extensions of credit as contemplated under the Loan Agreement and as an inducement to Lender to do so, and for and in consideration of the mutual promises, covenants and agreements hereinafter set forth, Grantor and Lender hereby agree as follows:

1.  <u>Creation of Security Interest</u>.  Grantor hereby grants to Lender a lien on and security interest in and does hereby collaterally assign, pledge, mortgage, convey and set over unto Lender all of the assets of Grantor including, without limitation, the following whether now owned or hereafter acquired by or on behalf of Grantor (hereinafter referred to collectively as the "Collateral"):

**A.**  All new and used automobiles, vans, trucks and other vehicles held for sale or lease by Grantor, including all additions and accessories thereto, and all other inventory of Grantor including Grantor's raw materials, work in progress, finished goods, merchandise, parts and supplies, goods held for sale or lease or furnished under contracts of service in which Grantor now has or hereafter acquires any right, and all documents of title, warehouse receipts, bills of lading, and all other documents of every type covering the forgoing;

**B.**  All accounts, including trade accounts, account receivable, other receivables, or other right to payment for goods or services rendering owing to Grantor, amounts due from credit card payments, leases, rents, and license fees, and other rights to receive the payment of money;

**C.**  All deposit accounts, including the Primary Deposit Account, deposits, monies, contract rights, documents, instruments, general intangibles, chattel paper, securities accounts, brokerage accounts (excluding all IRA and Keogh accounts) as those terms are defined in the Uniform Commercial Code ("UCC");

**D**  All investment property and securities and Grantor's rights to receive distributions, dividends, or other benefits of ownership of all entities in which Grantor is a member;

7CV3936.DOCX

E.      All general intangibles of any kind including patents, trademarks, copyrights, trade names, created software, and licenses;

F.      All machinery, equipment, furniture, fixtures, furnishings, tools, software, and supplies; and

G.      All additions, accessions, modifications, improvements, replacements, and substitutions of any of the foregoing as well as all proceeds, whether cash, promissory notes, and other property, real or personal or otherwise, resulting from the sale or other disposition of all or any part of the foregoing, including insurance proceeds, whether now or hereafter existing.

For purposes hereof, the term "receivables" shall mean and include all of Grantor's present and future rights to payment for goods, merchandise or inventory sold or leased or for services rendered, including, without limitation, those which are not evidenced by instruments or chattel paper, and whether or not they have been earned by performance, whether or not the same are listed on any schedules, reports or assignments furnished to Lender from time to time, or any letters of credit on which Grantor is named as beneficiary, contract rights, chattel paper, instruments, documents, insurance proceeds, and all such obligations whatsoever owing to Grantor, together with all instruments and all documents of title representing any of the foregoing, all rights in any goods, merchandise or inventory which any of the same may represent, all rights in any returned or repossessed goods, merchandise and inventory, and all right, title, security and guaranties with respect to each of the foregoing, including, without limitation, any right of stoppage in transit, replevin and reclamation and all other rights and remedies of an unpaid vendor or lienor, and any liens held by Grantor as a mechanic, contractor, subcontractor, processor, materialman, machinist, manufacturer, artisan or otherwise.

2.      Grantor's Liabilities.

(a)      Payment of Indebtedness. The security interest created herein is given as additional security for: the payment to Lender of all indebtedness evidenced by and according to the terms of the Note, the Loan Agreement and the other Loan Documents; the payment of all sums hereafter loaned, paid out, expended or advanced by Lender under the terms of this Agreement, together with interest thereon; all extensions, increases, or renewals of the Note, the Loan Agreement and the other Loan Documents evidencing sums hereafter loaned, paid out, expended or advanced by Lender, its successors or assigns, to or for the account of Borrower; the discharge and performance of all agreements and obligations under each of the Note, the Loan Agreement and the other Loan Documents; and the payment of any other debt obligations that Borrower may heretofore or hereafter agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender (all of the foregoing are hereinafter collectively called the "Indebtedness").

(b)      Protection of Collateral. Grantor shall take any and all steps required in the reasonable judgment of Lender to protect the Collateral and in pursuance thereof Grantor agrees that the tangible Collateral:

7CV3936.DOCX

(i)     Shall be kept at Grantor's facility located at 3320 S. Outer Belt Road, Grain Valley, Missouri 64029 or at some other location agreed to by Lender in writing, and shall be used only in the ordinary course of the Grantor's business and the operation thereof;

(ii)    Shall not be misused, wasted or allowed to deteriorate, except for the ordinary wear and tear resulting from its use, as aforesaid;

(iii)   To the extent insurable, shall at all times be insured against loss, damage, theft and such other risks as Lender may require in such amounts, with such companies, with such deductibles, under such policies, in such form and for such periods as shall be satisfactory to Lender, and each such policy shall provide that the loss thereunder and the proceeds payable thereunder shall be payable to Lender as its interest may appear, and any proceeds of such insurance which may be received by Lender shall be applied as required under the Loan Documents;

(iv)    Shall not be used in violation of any applicable statute, law, rule, regulation or ordinance;

(v)     Shall be kept and maintained in good operating condition and repair and Grantor shall make all necessary replacements thereof and renewals thereto so that the value and operating efficiency thereof shall at all times be maintained and preserved, except where the failure to so maintain and preserve would not have a material adverse effect on the business, financial conditions or operations of Grantor; and

(vi)    With 24 hours prior notice, may be examined and inspected by Lender during regular business hours, wherever located.

(c)     <u>Protection of Security Interest</u>.  Grantor shall take any and all steps necessary to protect the priority of the security interest granted herein, and in pursuance of this obligation, Grantor agrees that:

(i)     Grantor shall not sell, transfer, lease or otherwise dispose of any part of the Collateral or any interest therein or offer to do so, except in the ordinary course of business of Grantor, without the prior written consent of Lender, which shall not be unreasonably withheld, conditioned or delayed, or permit anything to be done that may impair the value of any of the Collateral or the security intended to be afforded by this Agreement.

(ii)    Grantor will comply with all applicable statutes and governmental regulations and pay and discharge, when due, before any penalty attaches thereto for nonpayment thereof, all taxes, assessments and governmental charges of any kind now or hereafter levied upon or assessed against Grantor, the Collateral, any income therefrom or upon the subject of the security interest of Lender; provided, however, that Grantor shall not be required to pay any such taxes, assessments, or other governmental charges so long as Grantor shall in good faith contest the validity thereof, and if such contest is made, Grantor will provide for the payment of the taxes, assessments or other governmental charges so contested.  In the event Grantor, at any time, fails to pay such taxes, assessments and charges, or to obtain

7CV3936.DOCX

discharges, subject to the provision of the preceding sentence relative to contesting such items, Grantor shall so advise Lender thereof in writing and Lender may, in its sole discretion, without waiving or releasing any of Grantor's obligations to Lender or liability of Grantor or any Event of Default, make such payment, or any part thereof, or obtain such discharge or take other action with respect thereto which Lender deems advisable. All sums so paid by Lender and any expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorneys' fees, shall be immediately due and payable from Grantor to Lender.

(iii)    Grantor hereby authorizes Lender to record a financing statement or statements necessary to perfect Lender's security interest in the Collateral, and pay all costs and fees associated with filing such financing statement or statements. Grantor shall sign and execute alone or with Lender any other document or procure any documents and pay all connected costs, expenses and fees, including, without limitation, reasonable attorney's fees, necessary to protect the security interest under this Agreement against the rights, interests or claims of third persons;

(iv)    Grantor shall reimburse Lender for all reasonable costs, expenses and fees, including, without limitation, court costs and reasonable attorney's fees, incurred for any action taken by Lender to remedy a default of Grantor under this Agreement;

(v)    Grantor hereby authorizes Lender to file any financing statement in the future necessary to fully perfect the security interest created herein, and Grantor shall (A) from time to time promptly execute and deliver to Lender all such other assignments, certificates, supplemental writings and other document, and do all other acts or things as Lender may reasonably request in order to more fully evidence and perfect the security interest created herein; (B) punctually and properly perform all of Grantor's agreements and obligations under this Agreement, the Note, the Loan Agreement and the other Loan Documents and under any other security agreement, mortgage, deed of trust, collateral pledge, agreement or contract of any kind now or hereafter existing as security for and in connection with payment of the Indebtedness, or any part thereof; (C) pay the Indebtedness in accordance with the terms thereof and in accordance with the terms of this Agreement, the Note, the Loan Agreement and the other Loan Documents or other writings evidencing the Indebtedness, or any part thereof; (D) promptly furnish Lender with any information or writings which Lender may reasonably request concerning the Collateral; (E) allow Lender to inspect all records of Grantor relating to the Collateral, the Indebtedness and the business and operation of Grantor, and to make and take away copies of such records; (F) promptly notify Lender of any change in any facts or circumstances warranted or represented by Grantor in this Agreement or in any other writing furnished by Grantor to Lender in connection with the Collateral, the Indebtedness and the business and operation of Grantor; (G) promptly notify Lender of any claim, action or proceeding affecting title to the Collateral, or any part thereof, or the security interest created herein, and, at the request of Lender, appear in and defend, at Grantor's sole cost and expense, any such action or proceeding; and (H) promptly, after being requested by Lender, pay to Lender the amount of all reasonable expenses, including, without limitation, reasonable attorney's fees, court costs and other legal expenses, incurred by Lender in enforcing the security interest created herein;

7CV3936.DOCX

(vi)    Grantor shall not, without the prior written consent of Lender: create any other security interest in, mortgage, pledge, or otherwise encumber the Collateral, or any part thereof, or permit the same to be or become subject to any lien, attachment, execution, sequestration, other legal or equitable process, or any encumbrance of any kind or character;

(vii)   Should the Collateral, or any part thereof ever be in any manner converted by its issuer or maker into another type of property or any money or other proceeds ever be paid or delivered to Grantor as a result of Grantor's rights in the Collateral, then, in any such event, all such property, money and other proceeds shall become part of the Collateral, and Grantor covenants to forthwith pay or deliver to Lender all of the same which is susceptible of delivery and, at the same time, if Lender deems it necessary and so requests, Grantor will properly endorse or assign the same.  With respect to any of such property of a kind requiring any additional security agreement, financing statement or other writing to perfect a security interest therein in favor of Lender, Grantor will forthwith execute and deliver to Lender whatever Lender shall reasonably deem necessary or proper for such purpose; and

(viii)  In the event that Grantor fails to perform any covenant, duty or agreement of Grantor to be performed in accordance with its terms hereunder, Lender may, but shall never be obligated to, perform or attempt to perform such covenant, duty or agreement on behalf of Grantor, and any reasonable amount expended by Lender in such performance or attempted performance shall become a part of the Indebtedness, and, at the request of Lender, Grantor agrees to pay such amount promptly to Lender at Lender's address set forth opposite its name below, or at such other place as Lender may designate, together with interest thereon at the "Default Rate" (as such term is defined in the Apex Line of Credit Note) from the date of such expenditure by Lender until paid.

3.      Default. The occurrence of any one or more of the following shall be an "Event of Default" for purposes of this Agreement (subject to any applicable cure periods set forth in the Loan Documents if no applicable cure period is set forth herein):

(a)     Failure to Pay: The Borrower's failure to pay when due any sums owed by Borrower to Lender under the Note or any other obligation owed by Borrower to Lender;

(b)     Untrue Representations and Warranties: The breach of any of the representations or warranties of Grantor as set forth in this Agreement in any material respect;

(c)     Non-performance of Grantor's Liabilities: If any default shall occur in the due and punctual performance of or compliance with any of the terms, covenants, conditions or agreements contained herein (other than as described in any other provision of this Section) and shall not have been cured within any applicable notice and cure period;

(d)     Assignment for Benefit of Creditors: The execution of an assignment for the benefit of creditors by Borrower or the filing of a petition for relief under the United States Bankruptcy Code, whether voluntary or involuntary;

7CV3936.DOCX

Force Midwest LLC *et. al*
Force Midwest Security Agreement – Page 6

(e)     Process Against the Collateral:  The levy of any execution, attachment, sequestration or other writ against the Collateral or any part thereof not dismissed within sixty (60) days after such levy; or

(f)     Default under Loan Documents:  The occurrence of any Event of Default under any of the other Loan Documents.

4.     Consequences of Default.  Upon the occurrence of any such Event of Default, and expiration of any applicable cure periods provided in the Loan Documents, Lender may, at its option, declare all Indebtedness secured hereby to be immediately due and payable to Lender without demand or notice of any kind whatsoever, and such Indebtedness thereupon shall immediately become due and payable to Lender without demand or notice, but with such adjustments, if any, with respect to interest or other charges as may be provided for herein or in the Note, the Loan Agreement, the other Loan Documents or any other written agreements between Borrower and Lender.

5.     Lender's Rights and Remedies.  Lender shall have available to it the following rights and remedies:

(a)     Right to Assign.  Lender may assign this Agreement, and if Lender does assign this Agreement, the assignee shall be entitled to the performance of all of Grantor's agreements and obligations under this Agreement, and the assignee shall be entitled to all the rights and remedies of Lender under this Agreement.

(b)     Right to Discharge Grantor's Liabilities.  Lender may, at its option, discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral, may remedy or cure any default of Grantor under the terms of any lease, rental agreement or other document which in any way pertains to or affects Grantor's title to or interest in any of the Collateral, may pay for insurance on the Collateral, and may pay for the maintenance and preservation of the Collateral, and Grantor agrees to reimburse Lender, on demand, for any payment made or any reasonable expense incurred by Lender, including, without limitation, attorney's fees, pursuant to the foregoing authorization, together with interest at the Default Rate from the date so paid or incurred by Lender, which payments, expenses and interest shall be secured by the security intended to be afforded by this Agreement and/or by the Loan Agreement and the other Loan Documents. In the event Lender makes any payment or incurs any expenses pursuant to this Section 5 (b), Lender shall provide Grantor a statement setting forth all such payments made or expenses incurred.

(c)     Right of Enforcement.  Lender shall have and may exercise any and all rights of enforcement and remedies before or after default afforded to a Lender under the UCC, together with any and all other rights and remedies otherwise provided and available to Lender at law or in equity as of the date of this Agreement or the date of Grantor's default; and, in conjunction with, in addition to, or substitution for those rights and remedies, at Lender's discretion, Lender may:

7CV3936.DOCX

(i)    To the extent permitted by law, enter upon Grantor's premises to take possession of, assemble and collect the Collateral or to render it or any portion of the Collateral unusable; and/or

(ii)    Remedy any default in any reasonable manner, without waiving its rights and remedies upon default and without waiving any other prior or subsequent default.

(d)    Right of Sale.

(i)    Grantor agrees that following an Event of Default, after expiration of any applicable notice and cure periods, Lender may, at its option, sell or dispose of the Collateral at public or private sale without any previous demand of performance or notice to Grantor of any such sale whatsoever, except as provided under the UCC, and from the proceeds of sale retain: (A) all costs and charges incurred by Lender in taking and causing the removal and sale of said property, including such reasonable attorney's fees as shall have been incurred by Lender; and (B) all sums due pursuant to the Note, the Loan Agreement, the other Loan Documents and this Agreement, and all accrued interest thereon.  Any surplus of such proceeds remaining shall be paid to Grantor.

(ii)    At any sale or sales made pursuant to this Agreement or in a suit to foreclose the same, the Collateral may be sold in masse or separately, at the same or at different times, at the option of Lender or its assigns. Such sale may be public or private, with notice as required by the UCC, and the Collateral need not be present at the time or place of sale. At any such sale, Lender or the holder of the Note hereby secured may bid for and purchase any of the property sold, notwithstanding that such sale is conducted by Lender or its attorneys, agents, or assigns, and no irregularity in the manner of sale or of giving notice shall operate to preclude Lender from recovering the Indebtedness.

(iii)    If any notification of intended sale or other disposition of the Collateral or any part thereof is required under the UCC or other law, such notification, if mailed, shall be deemed reasonably and properly given if mailed to Grantor at least ten (10) days before such sale or disposition.

(e)    Power of Attorney.  Grantor hereby authorizes Lender to make, constitute and appoint any officer or agent of Lender, as Lender may select in the Lender's sole discretion, as Grantor's true and lawful attorney-in-fact, with power (i) to endorse Grantor's name on all applications, documents, papers and instruments necessary or desirable for the Lender to protect its security interest in the Collateral, (ii) from and after the occurrence of any Event of Default (after any applicable grace or cure periods) in accordance with this Agreement and applicable law, (y) to assign, pledge, convey or otherwise transfer title in or dispose of the Collateral to anyone, and (z) to enforce or use the patents or trademarks or to grant or issue any exclusive or non-exclusive license under the patents or trademarks to any third party, or to sell, assign, transfer, pledge, encumber or otherwise transfer title in or dispose of the patents or trademarks to any third party. This power of attorney shall be irrevocable until all of the Indebtedness has been paid in full and all of the financing arrangements between Grantor and Lender have been terminated and Lender has no further obligation to make loans to Grantor.

7CV3936.DOCX

(f) <u>Miscellaneous</u>. Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times. The failure of Lender at any time or times to enforce its rights under said provisions strictly in accordance with the same shall not be construed or operate as a waiver of any of the rights and remedies granted Lender hereunder or as having created a custom in any way or manner contrary to the specific provisions of this Agreement or as having in any way or manner modified the same. All rights and remedies of Lender are cumulative and concurrent, and the exercise of one right or remedy by Lender shall not be deemed a waiver or release of any other right or remedy. Except as otherwise specifically required herein, notice of the exercise of any right, remedy or power granted to Lender by this Agreement is not required to be given.

6. <u>Representations and Warranties</u>. Grantor represents and warrants that:

(a) Grantor has authority to execute and deliver this Agreement;

(b) Except for those financing statements filed of record in the office of the Missouri Secretary of State as of the date of this Agreement with respect to security interests approved by Lender (the "Permitted Liens"), as of the date hereof, no financing statement covering the Collateral, or any part thereof, has been filed with any filing officer;

(c) Except for the Permitted liens, the Collateral is free and clear of all liens and encumbrances, and, as of the date hereof, no other security agreement covering the Collateral, or any part thereof, has been made and no security interest, other than the one herein created, has attached or been perfected in the Collateral or in any part thereof;

(d) No dispute, right of set-off, counterclaim or defenses exist with respect to any part of the Collateral;

(e) All information supplied and statements made in any financial or credit statement or application for credit heretofore delivered to Lender by or on behalf of Grantor or any guarantor of the Note prior to the execution of this Agreement are true and correct in all material respects as of the date hereof; and

(f) At the time Lender's security interest created herein and/or by virtue of any of the other Loan Documents attaches to any of the Collateral or its proceeds, Grantor will be the lawful owner with the right to transfer any interest therein, and Grantor will make such further assurances so as to prove title to the Collateral in Grantor as may be required and will defend the Collateral and its proceeds against the lawful claims and demands of all persons whomsoever.

The delivery at any time by Grantor to Lender of the Collateral shall constitute a representation and warranty by Grantor under this Agreement that, with respect to such Collateral, and each item thereof, Grantor is the owner of the Collateral and the matters heretofore represented and warranted in this Paragraph 6 are true, complete and correct. Further,

7CV3936.DOCX

Grantor, at the request of Lender, agrees to amend this Agreement and any and all financing statements filed in connection therewith for the purpose of setting forth in said Agreement and said financing statements an accurate and itemized list, when known, of the Collateral now generally described herein and in said financing statements and to include in said accurate and itemized list an identification of the Collateral by make, model, serial number and other appropriate descriptive data.

      7.      <u>Mutual Agreements</u>. Grantor and Lender mutually agree as follows:

      (a)      "Grantor" and "Lender" as used in this Agreement include the successors and permitted assigns of those parties.

      (b)      This Agreement includes all amendments and supplements thereto and all assignments thereof. This Agreement shall not be amended, modified or supplemented without the written agreement of Grantor and Lender at the time of such amendment, modification or supplement.

      (c)      It is expressly intended, understood and agreed that this Agreement, the Note, the Loan Agreement and the other Loan Documents are made and entered into for the sole protection and benefit of the parties thereto, and their respective successors and assigns (but in the case of assigns of Grantor or Borrower, only to the extent permitted under the Loan Documents), and no other person or persons shall have any right of action hereunder or rights to the Loan proceeds at any time; that the Loan proceeds do not constitute a trust fund for the benefit of any third party; that no third party shall under any circumstances be entitled to any equitable lien on any undisbursed Loan proceeds at any time; and that Lender shall have a lien upon and right to direct application of any undisbursed Loan proceeds as additional security for this Agreement, the Note, the Loan Agreement and the other Loan Documents. The relationship between Lender and Borrower is solely that of a lender and borrower, and nothing contained herein, or in the Note, the Loan Agreement or the other Loan Documents shall in any manner be construed as making the parties hereto partners, joint venturers or creating any other relationship other than lender and borrower.

      (d)      This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri. All provisions of this Agreement shall be deemed valid and enforceable to the extent permitted by law. Any provision or provisions of this Agreement which are held unenforceable, invalid or contrary to law by a court of competent jurisdiction, or the inclusion of which would affect the validity or enforceability of this Agreement, shall be of no force or effect, and in such event each and all of the remaining provisions of this Agreement shall subsist and remain and be fully effective according to the tenor of this Agreement as though such invalid, unenforceable or unlawful provision or provisions had not been included in this Agreement.

      (e)      To the extent permitted by law, Grantor hereby waives any and all rights to require marshalling of assets by Lender.

7CV3936.DOCX

Force Midwest LLC *et. al*
Force Midwest Security Agreement – Page 10

(f)     Any and all notices given in connection with this Agreement shall be delivered in accordance with the procedures set forth in the Loan Agreement.

(g)     Grantor hereby agrees that no liability shall be asserted or enforced by Grantor against Lender in its exercise of the powers and rights herein granted, all such liability being hereby expressly waived and released by Grantor.  Grantor hereby agrees to indemnify, defend and hold Lender harmless from and against any and all liability, expense, cost or damage which may be incurred by, asserted against or imposed upon Lender at any time which relates to or arises from the use, operation or lease of any of the Collateral or the exercise by Lender of the powers and rights herein granted.

(h)     This Agreement shall inure to the benefit of Lender, its successors and assigns and shall be binding upon Grantor and its successors and permitted assigns.

(i)     Lender is hereby authorized to rely upon and accept as an original this Agreement or any communication which is sent to the Lender by facsimile, telegraphic or other electronic transmission (each, a "Communication") which the Lender in good faith believes has been signed by Grantor and has been delivered to Lender by a properly authorized representative of the Grantor, whether or not that is in fact the case.  Notwithstanding the foregoing, Lender shall not be obligated to accept any such Communication as an original and may in any instance require that an original document be submitted to the Lender in lieu of, or in addition to, any such Communication.

(j)     Should this Agreement be signed by more than one party, all obligations contained shall be deemed to be the joint and several obligations of each party executing this Security Agreement.

(k)     This Agreement may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document.  An electronic transmission or other facsimile of this Agreement or any of the Loan Documents shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

8.     <u>Venue</u>.  Venue for any action arising pursuant to or to enforce any provision of this Agreement shall be exclusively found in the Circuit Court of Jackson County, Missouri.  Grantor hereby submits to the jurisdiction of the Circuit Court of Jackson County, Missouri.

9.     <u>Waiver of Jury Trail.</u>  **GRANTOR WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GRANTOR AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.**

7CV3936.DOCX

THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GRANTOR, AND GRANTOR HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. GRANTOR AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS DOCUMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GRANTOR TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

7CV3936.DOCX

IN WITNESS WHEREOF, Grantor and Lender have caused this Security Agreement to be executed by their duly authorized officer, manager, or representative as of the date set forth below.

**"GRANTOR"**

**FORCE MIDWEST, LLC,** a Missouri limited liability company

By: _____     Date: _12/2/19_
Brad Carlson, Manager

**"LENDER"**

**ENTERPRISE BANK & TRUST**

By: _____     Date: _12/2/19_
Aaron Wiens, Vice President

7CV3936.DOCX

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is made effective December 2, 2019 by **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Grantor"), with a mailing address of 3320 S. Outer Belt Road, Grain Valley, Missouri 64029, to and for the benefit of **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender"), with a mailing address of 12695 Metcalf Avenue, Overland Park, Kansas 66213.

### R E C I T A L S:

A.      Grantor and **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Force"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MULUNGAS, LLC,** a Missouri limited liability company ("Mulungas"), **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Mid Western"), and **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Force Commercial" and together with Grantor, Force, MAG, Mulungas, and Mid Western collectively herein "Borrower") have executed and delivered to Lender that certain Business Loan Agreement (the "Loan Agreement") dated of even date herewith under the terms of which Lender has agreed to make the following loans: (i) a loan to and for Borrower in the original principal amount of **ONE MILLION and 00/100THS DOLLARS ($1,000,000.00)** (the "Apex Line of Credit Loan"), (ii) a loan to and for Borrower in the original principal amount of **TWO MILLION and 00/100THS DOLLARS ($2,000,000.00)** (the "MAG Line of Credit Loan"), (iii) a loan to and for Borrower in the original principal amount of **SIX HUNDRED SIXTY-TWO THOUSAND NINE HUNDRED FOURTEEN and 00/100THS DOLLARS ($662,914.00)** (the "Apex Term Loan"), and (iv) a loan to and for Borrower in the original principal amount of **TWO MILLION EIGHT HUNDRED THIRTY-TWO THOUSAND and 00/100THS DOLLARS ($2,832,000.00)** (the "Mulungas Term Loan").

B.      (i) The Apex Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$1,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "Apex Line of Credit Note"), (ii) the MAG Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "MAG Line of Credit Note"), (iii) the Apex Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$662,914.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Apex Term Note"), and (iv) the Mulungas Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,832,000.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Mulugas Term Note").

C.      For purposes of this Agreement the following definitions apply:

(i)      the Apex Line of Credit Loan, the MAG Line of Credit Loan, the Apex

7CG0112.DOCX

Force Midwest LLC *et. al*
Apex Security Agreement - Page 1 of 13

Term Loan, and the Mulungas Term Loan are collectively referred to herein as the "Loan";

(ii)    the Apex Line of Credit Note, the MAG Line of Credit Note, the Apex Term Note, and the Mulungas Term Note are collectively referred to herein as the "Note"; and

(iii)    all capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement.

**C.**    Grantor is willing, on the terms and conditions contained herein, in the Loan Agreement, in the Note and in the other Loan Documents (as defined in the Loan Agreement), to secure Grantor's obligations under the Note and the other Loan Documents.

**D.**    Lender has required as a condition to making credit available to Borrower under the terms of the Note and the Loan Agreement that Grantor secure Borrower's obligations to Lender with certain assets of the Grantor.

NOW THEREFORE, for and in consideration of the making of the Loan and the extensions of credit as contemplated under the Loan Agreement and as an inducement to Lender to do so, and for and in consideration of the mutual promises, covenants and agreements hereinafter set forth, Grantor and Lender hereby agree as follows:

1.    Creation of Security Interest.  Grantor hereby grants to Lender a lien on and security interest in and does hereby collaterally assign, pledge, mortgage, convey and set over unto Lender all of the assets of Grantor including, without limitation, the following whether now owned or hereafter acquired by or on behalf of Grantor (hereinafter referred to collectively as the "Collateral"):

A.    All new and used automobiles, vans, trucks and other vehicles held for sale or lease by Grantor, including all additions and accessories thereto, and all other inventory of Grantor including Grantor's raw materials, work in progress, finished goods, merchandise, parts and supplies, goods held for sale or lease or furnished under contracts of service in which Grantor now has or hereafter acquires any right, and all documents of title, warehouse receipts, bills of lading, and all other documents of every type covering the forgoing;

B.    All accounts, including trade accounts, account receivable, other receivables, or other right to payment for goods or services rendering owing to Grantor, amounts due from credit card payments, leases, rents, and license fees, and other rights to receive the payment of money;

C.    All deposit accounts, including the Primary Deposit Account, deposits, monies, contract rights, documents, instruments, general intangibles, chattel paper, securities accounts, brokerage accounts (excluding all IRA and Keogh accounts) as those terms are defined in the Uniform Commercial Code ("UCC");

D    All investment property and securities and Grantor's rights to receive distributions, dividends, or other benefits of ownership of all entities in which Grantor is a member;

7CG0112.DOCX

Force Midwest LLC *et. al*
Apex Security Agreement – Page 2

E.    All general intangibles of any kind including patents, trademarks, copyrights, trade names, created software, and licenses;

F.    All machinery, equipment, furniture, fixtures, furnishings, tools, software, and supplies; and

G.    All additions, accessions, modifications, improvements, replacements, and substitutions of any of the foregoing as well as all proceeds, whether cash, promissory notes, and other property, real or personal or otherwise, resulting from the sale or other disposition of all or any part of the foregoing, including insurance proceeds, whether now or hereafter existing.

For purposes hereof, the term "receivables" shall mean and include all of Grantor's present and future rights to payment for goods, merchandise or inventory sold or leased or for services rendered, including, without limitation, those which are not evidenced by instruments or chattel paper, and whether or not they have been earned by performance, whether or not the same are listed on any schedules, reports or assignments furnished to Lender from time to time, or any letters of credit on which Grantor is named as beneficiary, contract rights, chattel paper, instruments, documents, insurance proceeds, and all such obligations whatsoever owing to Grantor, together with all instruments and all documents of title representing any of the foregoing, all rights in any goods, merchandise or inventory which any of the same may represent, all rights in any returned or repossessed goods, merchandise and inventory, and all right, title, security and guaranties with respect to each of the foregoing, including, without limitation, any right of stoppage in transit, replevin and reclamation and all other rights and remedies of an unpaid vendor or lienor, and any liens held by Grantor as a mechanic, contractor, subcontractor, processor, materialman, machinist, manufacturer, artisan or otherwise.

2.    <u>Grantor's Liabilities</u>.

(a)    <u>Payment of Indebtedness</u>. The security interest created herein is given as additional security for: the payment to Lender of all indebtedness evidenced by and according to the terms of the Note, the Loan Agreement and the other Loan Documents; the payment of all sums hereafter loaned, paid out, expended or advanced by Lender under the terms of this Agreement, together with interest thereon; all extensions, increases, or renewals of the Note, the Loan Agreement and the other Loan Documents evidencing sums hereafter loaned, paid out, expended or advanced by Lender, its successors or assigns, to or for the account of Borrower; the discharge and performance of all agreements and obligations under each of the Note, the Loan Agreement and the other Loan Documents; and the payment of any other debt obligations that Borrower may heretofore or hereafter agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender (all of the foregoing are hereinafter collectively called the "Indebtedness").

(b)    <u>Protection of Collateral</u>. Grantor shall take any and all steps required in the reasonable judgment of Lender to protect the Collateral and in pursuance thereof Grantor agrees that the tangible Collateral:

7CG0112.DOCX

(i)     Shall be kept at Grantor's facility located at 3320 S. Outer Belt Road, Grain Valley, Missouri 64029 or at some other location agreed to by Lender in writing, and shall be used only in the ordinary course of the Grantor's business and the operation thereof;

(ii)     Shall not be misused, wasted or allowed to deteriorate, except for the ordinary wear and tear resulting from its use, as aforesaid;

(iii)     To the extent insurable, shall at all times be insured against loss, damage, theft and such other risks as Lender may require in such amounts, with such companies, with such deductibles, under such policies, in such form and for such periods as shall be satisfactory to Lender, and each such policy shall provide that the loss thereunder and the proceeds payable thereunder shall be payable to Lender as its interest may appear, and any proceeds of such insurance which may be received by Lender shall be applied as required under the Loan Documents;

(iv)     Shall not be used in violation of any applicable statute, law, rule, regulation or ordinance;

(v)     Shall be kept and maintained in good operating condition and repair and Grantor shall make all necessary replacements thereof and renewals thereto so that the value and operating efficiency thereof shall at all times be maintained and preserved, except where the failure to so maintain and preserve would not have a material adverse effect on the business, financial conditions or operations of Grantor; and

(vi)     With 24 hours prior notice, may be examined and inspected by Lender during regular business hours, wherever located.

(c)     <u>Protection of Security Interest</u>.  Grantor shall take any and all steps necessary to protect the priority of the security interest granted herein, and in pursuance of this obligation, Grantor agrees that:

(i)     Grantor shall not sell, transfer, lease or otherwise dispose of any part of the Collateral or any interest therein or offer to do so, except in the ordinary course of business of Grantor, without the prior written consent of Lender, which shall not be unreasonably withheld, conditioned or delayed, or permit anything to be done that may impair the value of any of the Collateral or the security intended to be afforded by this Agreement.

(ii)     Grantor will comply with all applicable statutes and governmental regulations and pay and discharge, when due, before any penalty attaches thereto for nonpayment thereof, all taxes, assessments and governmental charges of any kind now or hereafter levied upon or assessed against Grantor, the Collateral, any income therefrom or upon the subject of the security interest of Lender; provided, however, that Grantor shall not be required to pay any such taxes, assessments, or other governmental charges so long as Grantor shall in good faith contest the validity thereof, and if such contest is made, Grantor will provide for the payment of the taxes, assessments or other governmental charges so contested.  In the event Grantor, at any time, fails to pay such taxes, assessments and charges, or to obtain

7CG0112.DOCX

discharges, subject to the provision of the preceding sentence relative to contesting such items, Grantor shall so advise Lender thereof in writing and Lender may, in its sole discretion, without waiving or releasing any of Grantor's obligations to Lender or liability of Grantor or any Event of Default, make such payment, or any part thereof, or obtain such discharge or take other action with respect thereto which Lender deems advisable. All sums so paid by Lender and any expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorneys' fees, shall be immediately due and payable from Grantor to Lender.

(iii)    Grantor hereby authorizes Lender to record a financing statement or statements necessary to perfect Lender's security interest in the Collateral, and pay all costs and fees associated with filing such financing statement or statements. Grantor shall sign and execute alone or with Lender any other document or procure any documents and pay all connected costs, expenses and fees, including, without limitation, reasonable attorney's fees, necessary to protect the security interest under this Agreement against the rights, interests or claims of third persons;

(iv)    Grantor shall reimburse Lender for all reasonable costs, expenses and fees, including, without limitation, court costs and reasonable attorney's fees, incurred for any action taken by Lender to remedy a default of Grantor under this Agreement;

(v)    Grantor hereby authorizes Lender to file any financing statement in the future necessary to fully perfect the security interest created herein, and Grantor shall (A) from time to time promptly execute and deliver to Lender all such other assignments, certificates, supplemental writings and other document, and do all other acts or things as Lender may reasonably request in order to more fully evidence and perfect the security interest created herein; (B) punctually and properly perform all of Grantor's agreements and obligations under this Agreement, the Note, the Loan Agreement and the other Loan Documents and under any other security agreement, mortgage, deed of trust, collateral pledge, agreement or contract of any kind now or hereafter existing as security for and in connection with payment of the Indebtedness, or any part thereof; (C) pay the Indebtedness in accordance with the terms thereof and in accordance with the terms of this Agreement, the Note, the Loan Agreement and the other Loan Documents or other writings evidencing the Indebtedness, or any part thereof; (D) promptly furnish Lender with any information or writings which Lender may reasonably request concerning the Collateral; (E) allow Lender to inspect all records of Grantor relating to the Collateral, the Indebtedness and the business and operation of Grantor, and to make and take away copies of such records; (F) promptly notify Lender of any change in any facts or circumstances warranted or represented by Grantor in this Agreement or in any other writing furnished by Grantor to Lender in connection with the Collateral, the Indebtedness and the business and operation of Grantor; (G) promptly notify Lender of any claim, action or proceeding affecting title to the Collateral, or any part thereof, or the security interest created herein, and, at the request of Lender, appear in and defend, at Grantor's sole cost and expense, any such action or proceeding; and (H) promptly, after being requested by Lender, pay to Lender the amount of all reasonable expenses, including, without limitation, reasonable attorney's fees, court costs and other legal expenses, incurred by Lender in enforcing the security interest created herein;

7CG0112.DOCX

Force Midwest LLC *et. al*
Apex Security Agreement – Page 5

(vi)    Grantor shall not, without the prior written consent of Lender: create any other security interest in, mortgage, pledge, or otherwise encumber the Collateral, or any part thereof, or permit the same to be or become subject to any lien, attachment, execution, sequestration, other legal or equitable process, or any encumbrance of any kind or character;

(vii)    Should the Collateral, or any part thereof ever be in any manner converted by its issuer or maker into another type of property or any money or other proceeds ever be paid or delivered to Grantor as a result of Grantor's rights in the Collateral, then, in any such event, all such property, money and other proceeds shall become part of the Collateral, and Grantor covenants to forthwith pay or deliver to Lender all of the same which is susceptible of delivery and, at the same time, if Lender deems it necessary and so requests, Grantor will properly endorse or assign the same.  With respect to any of such property of a kind requiring any additional security agreement, financing statement or other writing to perfect a security interest therein in favor of Lender, Grantor will forthwith execute and deliver to Lender whatever Lender shall reasonably deem necessary or proper for such purpose; and

(viii)    In the event that Grantor fails to perform any covenant, duty or agreement of Grantor to be performed in accordance with its terms hereunder, Lender may, but shall never be obligated to, perform or attempt to perform such covenant, duty or agreement on behalf of Grantor, and any reasonable amount expended by Lender in such performance or attempted performance shall become a part of the Indebtedness, and, at the request of Lender, Grantor agrees to pay such amount promptly to Lender at Lender's address set forth opposite its name below, or at such other place as Lender may designate, together with interest thereon at the "Default Rate" (as such term is defined in the Apex Line of Credit Note) from the date of such expenditure by Lender until paid.

3.    Default. The occurrence of any one or more of the following shall be an "Event of Default" for purposes of this Agreement (subject to any applicable cure periods set forth in the Loan Documents if no applicable cure period is set forth herein):

(a)    Failure to Pay: The Borrower's failure to pay when due any sums owed by Borrower to Lender under the Note or any other obligation owed by Borrower to Lender;

(b)    Untrue Representations and Warranties: The breach of any of the representations or warranties of Grantor as set forth in this Agreement in any material respect;

(c)    Non-performance of Grantor's Liabilities: If any default shall occur in the due and punctual performance of or compliance with any of the terms, covenants, conditions or agreements contained herein (other than as described in any other provision of this Section) and shall not have been cured within any applicable notice and cure period;

(d)    Assignment for Benefit of Creditors: The execution of an assignment for the benefit of creditors by Borrower or the filing of a petition for relief under the United States Bankruptcy Code, whether voluntary or involuntary;

7CG0112.DOCX

(e)     Process Against the Collateral:  The levy of any execution, attachment, sequestration or other writ against the Collateral or any part thereof not dismissed within sixty (60) days after such levy; or

(f)     Default under Loan Documents:  The occurrence of any Event of Default under any of the other Loan Documents.

4.     Consequences of Default.  Upon the occurrence of any such Event of Default, and expiration of any applicable cure periods provided in the Loan Documents, Lender may, at its option, declare all Indebtedness secured hereby to be immediately due and payable to Lender without demand or notice of any kind whatsoever, and such Indebtedness thereupon shall immediately become due and payable to Lender without demand or notice, but with such adjustments, if any, with respect to interest or other charges as may be provided for herein or in the Note, the Loan Agreement, the other Loan Documents or any other written agreements between Borrower and Lender.

5.     Lender's Rights and Remedies. Lender shall have available to it the following rights and remedies:

(a)     Right to Assign.  Lender may assign this Agreement, and if Lender does assign this Agreement, the assignee shall be entitled to the performance of all of Grantor's agreements and obligations under this Agreement, and the assignee shall be entitled to all the rights and remedies of Lender under this Agreement.

(b)     Right to Discharge Grantor's Liabilities. Lender may, at its option, discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral, may remedy or cure any default of Grantor under the terms of any lease, rental agreement or other document which in any way pertains to or affects Grantor's title to or interest in any of the Collateral, may pay for insurance on the Collateral, and may pay for the maintenance and preservation of the Collateral, and Grantor agrees to reimburse Lender, on demand, for any payment made or any reasonable expense incurred by Lender, including, without limitation, attorney's fees, pursuant to the foregoing authorization, together with interest at the Default Rate from the date so paid or incurred by Lender, which payments, expenses and interest shall be secured by the security intended to be afforded by this Agreement and/or by the Loan Agreement and the other Loan Documents. In the event Lender makes any payment or incurs any expenses pursuant to this Section 5 (b), Lender shall provide Grantor a statement setting forth all such payments made or expenses incurred.

(c)     Right of Enforcement.  Lender shall have and may exercise any and all rights of enforcement and remedies before or after default afforded to a Lender under the UCC, together with any and all other rights and remedies otherwise provided and available to Lender at law or in equity as of the date of this Agreement or the date of Grantor's default; and, in conjunction with, in addition to, or substitution for those rights and remedies, at Lender's discretion, Lender may:

7CG0112.DOCX

(i)     To the extent permitted by law, enter upon Grantor's premises to take possession of, assemble and collect the Collateral or to render it or any portion of the Collateral unusable; and/or

(ii)     Remedy any default in any reasonable manner, without waiving its rights and remedies upon default and without waiving any other prior or subsequent default.

(d)     <u>Right of Sale</u>.

(i)     Grantor agrees that following an Event of Default, after expiration of any applicable notice and cure periods, Lender may, at its option, sell or dispose of the Collateral at public or private sale without any previous demand of performance or notice to Grantor of any such sale whatsoever, except as provided under the UCC, and from the proceeds of sale retain: (A) all costs and charges incurred by Lender in taking and causing the removal and sale of said property, including such reasonable attorney's fees as shall have been incurred by Lender; and (B) all sums due pursuant to the Note, the Loan Agreement, the other Loan Documents and this Agreement, and all accrued interest thereon. Any surplus of such proceeds remaining shall be paid to Grantor.

(ii)     At any sale or sales made pursuant to this Agreement or in a suit to foreclose the same, the Collateral may be sold in masse or separately, at the same or at different times, at the option of Lender or its assigns. Such sale may be public or private, with notice as required by the UCC, and the Collateral need not be present at the time or place of sale. At any such sale, Lender or the holder of the Note hereby secured may bid for and purchase any of the property sold, notwithstanding that such sale is conducted by Lender or its attorneys, agents, or assigns, and no irregularity in the manner of sale or of giving notice shall operate to preclude Lender from recovering the Indebtedness.

(iii)     If any notification of intended sale or other disposition of the Collateral or any part thereof is required under the UCC or other law, such notification, if mailed, shall be deemed reasonably and properly given if mailed to Grantor at least ten (10) days before such sale or disposition.

(e)     <u>Power of Attorney</u>. Grantor hereby authorizes Lender to make, constitute and appoint any officer or agent of Lender, as Lender may select in the Lender's sole discretion, as Grantor's true and lawful attorney-in-fact, with power (i) to endorse Grantor's name on all applications, documents, papers and instruments necessary or desirable for the Lender to protect its security interest in the Collateral, (ii) from and after the occurrence of any Event of Default (after any applicable grace or cure periods) in accordance with this Agreement and applicable law, (y) to assign, pledge, convey or otherwise transfer title in or dispose of the Collateral to anyone, and (z) to enforce or use the patents or trademarks or to grant or issue any exclusive or non-exclusive license under the patents or trademarks to any third party, or to sell, assign, transfer, pledge, encumber or otherwise transfer title in or dispose of the patents or trademarks to any third party. This power of attorney shall be irrevocable until all of the Indebtedness has been paid in full and all of the financing arrangements between Grantor and Lender have been terminated and Lender has no further obligation to make loans to Grantor.

7CG0112.DOCX

(f) <u>Miscellaneous</u>. Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times. The failure of Lender at any time or times to enforce its rights under said provisions strictly in accordance with the same shall not be construed or operate as a waiver of any of the rights and remedies granted Lender hereunder or as having created a custom in any way or manner contrary to the specific provisions of this Agreement or as having in any way or manner modified the same. All rights and remedies of Lender are cumulative and concurrent, and the exercise of one right or remedy by Lender shall not be deemed a waiver or release of any other right or remedy. Except as otherwise specifically required herein, notice of the exercise of any right, remedy or power granted to Lender by this Agreement is not required to be given.

6. <u>Representations and Warranties</u>. Grantor represents and warrants that:

(a) Grantor has authority to execute and deliver this Agreement;

(b) Except for those financing statements filed of record in the office of the Missouri Secretary of State as of the date of this Agreement with respect to security interests approved by Lender (the "Permitted Liens"), as of the date hereof, no financing statement covering the Collateral, or any part thereof, has been filed with any filing officer;

(c) Except for the Permitted liens, the Collateral is free and clear of all liens and encumbrances, and, as of the date hereof, no other security agreement covering the Collateral, or any part thereof, has been made and no security interest, other than the one herein created, has attached or been perfected in the Collateral or in any part thereof;

(d) No dispute, right of set-off, counterclaim or defenses exist with respect to any part of the Collateral;

(e) All information supplied and statements made in any financial or credit statement or application for credit heretofore delivered to Lender by or on behalf of Grantor or any guarantor of the Note prior to the execution of this Agreement are true and correct in all material respects as of the date hereof; and

(f) At the time Lender's security interest created herein and/or by virtue of any of the other Loan Documents attaches to any of the Collateral or its proceeds, Grantor will be the lawful owner with the right to transfer any interest therein, and Grantor will make such further assurances so as to prove title to the Collateral in Grantor as may be required and will defend the Collateral and its proceeds against the lawful claims and demands of all persons whomsoever.

The delivery at any time by Grantor to Lender of the Collateral shall constitute a representation and warranty by Grantor under this Agreement that, with respect to such Collateral, and each item thereof, Grantor is the owner of the Collateral and the matters heretofore represented and warranted in this Paragraph 6 are true, complete and correct. Further,

7CG0112.DOCX

Force Midwest LLC <i>et. al</i><br>Apex Security Agreement – Page 9

Grantor, at the request of Lender, agrees to amend this Agreement and any and all financing statements filed in connection therewith for the purpose of setting forth in said Agreement and said financing statements an accurate and itemized list, when known, of the Collateral now generally described herein and in said financing statements and to include in said accurate and itemized list an identification of the Collateral by make, model, serial number and other appropriate descriptive data.

    7.    <u>Mutual Agreements</u>. Grantor and Lender mutually agree as follows:

    (a)    "Grantor" and "Lender" as used in this Agreement include the successors and permitted assigns of those parties.

    (b)    This Agreement includes all amendments and supplements thereto and all assignments thereof. This Agreement shall not be amended, modified or supplemented without the written agreement of Grantor and Lender at the time of such amendment, modification or supplement.

    (c)    It is expressly intended, understood and agreed that this Agreement, the Note, the Loan Agreement and the other Loan Documents are made and entered into for the sole protection and benefit of the parties thereto, and their respective successors and assigns (but in the case of assigns of Grantor or Borrower, only to the extent permitted under the Loan Documents), and no other person or persons shall have any right of action hereunder or rights to the Loan proceeds at any time; that the Loan proceeds do not constitute a trust fund for the benefit of any third party; that no third party shall under any circumstances be entitled to any equitable lien on any undisbursed Loan proceeds at any time; and that Lender shall have a lien upon and right to direct application of any undisbursed Loan proceeds as additional security for this Agreement, the Note, the Loan Agreement and the other Loan Documents. The relationship between Lender and Borrower is solely that of a lender and borrower, and nothing contained herein, or in the Note, the Loan Agreement or the other Loan Documents shall in any manner be construed as making the parties hereto partners, joint venturers or creating any other relationship other than lender and borrower.

    (d)    This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri. All provisions of this Agreement shall be deemed valid and enforceable to the extent permitted by law. Any provision or provisions of this Agreement which are held unenforceable, invalid or contrary to law by a court of competent jurisdiction, or the inclusion of which would affect the validity or enforceability of this Agreement, shall be of no force or effect, and in such event each and all of the remaining provisions of this Agreement shall subsist and remain and be fully effective according to the tenor of this Agreement as though such invalid, unenforceable or unlawful provision or provisions had not been included in this Agreement.

    (e)    To the extent permitted by law, Grantor hereby waives any and all rights to require marshalling of assets by Lender.

7CG0112.DOCX

Force Midwest LLC *et. al*
Apex Security Agreement – Page 10

(f)     Any and all notices given in connection with this Agreement shall be delivered in accordance with the procedures set forth in the Loan Agreement.

(g)     Grantor hereby agrees that no liability shall be asserted or enforced by Grantor against Lender in its exercise of the powers and rights herein granted, all such liability being hereby expressly waived and released by Grantor.  Grantor hereby agrees to indemnify, defend and hold Lender harmless from and against any and all liability, expense, cost or damage which may be incurred by, asserted against or imposed upon Lender at any time which relates to or arises from the use, operation or lease of any of the Collateral or the exercise by Lender of the powers and rights herein granted.

(h)     This Agreement shall inure to the benefit of Lender, its successors and assigns and shall be binding upon Grantor and its successors and permitted assigns.

(i)     Lender is hereby authorized to rely upon and accept as an original this Agreement or any communication which is sent to the Lender by facsimile, telegraphic or other electronic transmission (each, a "Communication") which the Lender in good faith believes has been signed by Grantor and has been delivered to Lender by a properly authorized representative of the Grantor, whether or not that is in fact the case.  Notwithstanding the foregoing, Lender shall not be obligated to accept any such Communication as an original and may in any instance require that an original document be submitted to the Lender in lieu of, or in addition to, any such Communication.

(j)     Should this Agreement be signed by more than one party, all obligations contained shall be deemed to be the joint and several obligations of each party executing this Security Agreement.

(k)     This Agreement may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document.  An electronic transmission or other facsimile of this Agreement or any of the Loan Documents shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

8.     <u>Venue</u>. Venue for any action arising pursuant to or to enforce any provision of this Agreement shall be exclusively found in the Circuit Court of Jackson County, Missouri. Grantor hereby submits to the jurisdiction of the Circuit Court of Jackson County, Missouri.

9.     <u>Waiver of Jury Trail.</u>  **GRANTOR WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GRANTOR AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.**

7CG0112.DOCX

THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GRANTOR, AND GRANTOR HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. GRANTOR AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS DOCUMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GRANTOR TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

7CG0112.DOCX

IN WITNESS WHEREOF, Grantor and Lender have caused this Security Agreement to be executed by their duly authorized officer, manager, or representative as of the date set forth below.

**"GRANTOR"**

**APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company

By: _____     Date: 12/2/19
    Brad Carlson, Manager

**"LENDER"**

**ENTERPRISE BANK & TRUST**

By: _____     Date: 12/2/19
    Aaron Wiens, Vice President

7CG0112.DOCX

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is made effective December 2, 2019 by **MAG TRUCKS, LLC,** a Missouri limited liability company ("Grantor"), with a mailing address of 3320 S. Outer Belt Road, Grain Valley, Missouri 64029, to and for the benefit of **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender"), with a mailing address of 12695 Metcalf Avenue, Overland Park, Kansas 66213.

## R E C I T A L S:

A.   Grantor and **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Force"), **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **MULUNGAS, LLC,** a Missouri limited liability company ("Mulungas"), **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Mid Western"), and **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Force Commercial" and together with Grantor, Force, Apex, Mulungas, and Mid Western collectively herein "Borrower") have executed and delivered to Lender that certain Business Loan Agreement (the "Loan Agreement") dated of even date herewith under the terms of which Lender has agreed to make the following loans: (i) a loan to and for Borrower in the original principal amount of **ONE MILLION and 00/100THS DOLLARS ($1,000,000.00)** (the "Apex Line of Credit Loan"), (ii) a loan to and for Borrower in the original principal amount of **TWO MILLION and 00/100THS DOLLARS ($2,000,000.00)** (the "MAG Line of Credit Loan"), (iii) a loan to and for Borrower in the original principal amount of **SIX HUNDRED SIXTY-TWO THOUSAND NINE HUNDRED FOURTEEN and 00/100THS DOLLARS ($662,914.00)** (the "Apex Term Loan"), and (iv) a loan to and for Borrower in the original principal amount of **TWO MILLION EIGHT HUNDRED THIRTY-TWO THOUSAND and 00/100THS DOLLARS ($2,832,000.00)** (the "Mulungas Term Loan").

B.   (i) The Apex Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$1,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "Apex Line of Credit Note"), (ii) the MAG Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "MAG Line of Credit Note"), (iii) the Apex Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$662,914.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Apex Term Note"), and (iv) the Mulungas Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,832,000.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Mulugas Term Note").

C.   For purposes of this Agreement the following definitions apply:

(i)   the Apex Line of Credit Loan, the MAG Line of Credit Loan, the Apex

Term Loan, and the Mulungas Term Loan are collectively referred to herein as the "Loan";

(ii)   the Apex Line of Credit Note, the MAG Line of Credit Note, the Apex Term Note, and the Mulungas Term Note are collectively referred to herein as the "Note"; and

(iii)   all capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement.

**C.**   Grantor is willing, on the terms and conditions contained herein, in the Loan Agreement, in the Note and in the other Loan Documents (as defined in the Loan Agreement), to secure Grantor's obligations under the Note and the other Loan Documents.

**D.**   Lender has required as a condition to making credit available to Borrower under the terms of the Note and the Loan Agreement that Grantor secure Borrower's obligations to Lender with certain assets of the Grantor.

NOW THEREFORE, for and in consideration of the making of the Loan and the extensions of credit as contemplated under the Loan Agreement and as an inducement to Lender to do so, and for and in consideration of the mutual promises, covenants and agreements hereinafter set forth, Grantor and Lender hereby agree as follows:

1.   <u>Creation of Security Interest</u>.   Grantor hereby grants to Lender a lien on and security interest in and does hereby collaterally assign, pledge, mortgage, convey and set over unto Lender all of the assets of Grantor including, without limitation, the following whether now owned or hereafter acquired by or on behalf of Grantor (hereinafter referred to collectively as the "Collateral"):

A.   All new and used automobiles, vans, trucks and other vehicles held for sale or lease by Grantor, including all additions and accessories thereto, and all other inventory of Grantor including Grantor's raw materials, work in progress, finished goods, merchandise, parts and supplies, goods held for sale or lease or furnished under contracts of service in which Grantor now has or hereafter acquires any right, and all documents of title, warehouse receipts, bills of lading, and all other documents of every type covering the forgoing;

B.   All accounts, including trade accounts, account receivable, other receivables, or other right to payment for goods or services rendering owing to Grantor, amounts due from credit card payments, leases, rents, and license fees, and other rights to receive the payment of money;

C.   All deposit accounts, including the Primary Deposit Account, deposits, monies, contract rights, documents, instruments, general intangibles, chattel paper, securities accounts, brokerage accounts (excluding all IRA and Keogh accounts) as those terms are defined in the Uniform Commercial Code ("UCC");

D   All investment property and securities and Grantor's rights to receive distributions, dividends, or other benefits of ownership of all entities in which Grantor is a member;

7CV3817.DOCX

E.      All general intangibles of any kind including patents, trademarks, copyrights, trade names, created software, and licenses;

F.      All machinery, equipment, furniture, fixtures, furnishings, tools, software, and supplies; and

G.      All additions, accessions, modifications, improvements, replacements, and substitutions of any of the foregoing as well as all proceeds, whether cash, promissory notes, and other property, real or personal or otherwise, resulting from the sale or other disposition of all or any part of the foregoing, including insurance proceeds, whether now or hereafter existing.

For purposes hereof, the term "receivables" shall mean and include all of Grantor's present and future rights to payment for goods, merchandise or inventory sold or leased or for services rendered, including, without limitation, those which are not evidenced by instruments or chattel paper, and whether or not they have been earned by performance, whether or not the same are listed on any schedules, reports or assignments furnished to Lender from time to time, or any letters of credit on which Grantor is named as beneficiary, contract rights, chattel paper, instruments, documents, insurance proceeds, and all such obligations whatsoever owing to Grantor, together with all instruments and all documents of title representing any of the foregoing, all rights in any goods, merchandise or inventory which any of the same may represent, all rights in any returned or repossessed goods, merchandise and inventory, and all right, title, security and guaranties with respect to each of the foregoing, including, without limitation, any right of stoppage in transit, replevin and reclamation and all other rights and remedies of an unpaid vendor or lienor, and any liens held by Grantor as a mechanic, contractor, subcontractor, processor, materialman, machinist, manufacturer, artisan or otherwise.

2.      <u>Grantor's Liabilities</u>.

(a)      <u>Payment of Indebtedness</u>. The security interest created herein is given as additional security for: the payment to Lender of all indebtedness evidenced by and according to the terms of the Note, the Loan Agreement and the other Loan Documents; the payment of all sums hereafter loaned, paid out, expended or advanced by Lender under the terms of this Agreement, together with interest thereon; all extensions, increases, or renewals of the Note, the Loan Agreement and the other Loan Documents evidencing sums hereafter loaned, paid out, expended or advanced by Lender, its successors or assigns, to or for the account of Borrower; the discharge and performance of all agreements and obligations under each of the Note, the Loan Agreement and the other Loan Documents; and the payment of any other debt obligations that Borrower may heretofore or hereafter agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender (all of the foregoing are hereinafter collectively called the "Indebtedness").

(b)      <u>Protection of Collateral</u>. Grantor shall take any and all steps required in the reasonable judgment of Lender to protect the Collateral and in pursuance thereof Grantor agrees that the tangible Collateral:

7CV3817.DOCX

(i)     Shall be kept at Grantor's facility located at 3320 S. Outer Belt Road, Grain Valley, Missouri 64029 or at some other location agreed to by Lender in writing, and shall be used only in the ordinary course of the Grantor's business and the operation thereof;

(ii)     Shall not be misused, wasted or allowed to deteriorate, except for the ordinary wear and tear resulting from its use, as aforesaid;

(iii)     To the extent insurable, shall at all times be insured against loss, damage, theft and such other risks as Lender may require in such amounts, with such companies, with such deductibles, under such policies, in such form and for such periods as shall be satisfactory to Lender, and each such policy shall provide that the loss thereunder and the proceeds payable thereunder shall be payable to Lender as its interest may appear, and any proceeds of such insurance which may be received by Lender shall be applied as required under the Loan Documents;

(iv)     Shall not be used in violation of any applicable statute, law, rule, regulation or ordinance;

(v)     Shall be kept and maintained in good operating condition and repair and Grantor shall make all necessary replacements thereof and renewals thereto so that the value and operating efficiency thereof shall at all times be maintained and preserved, except where the failure to so maintain and preserve would not have a material adverse effect on the business, financial conditions or operations of Grantor; and

(vi)     With 24 hours prior notice, may be examined and inspected by Lender during regular business hours, wherever located.

(c)     <u>Protection of Security Interest</u>.  Grantor shall take any and all steps necessary to protect the priority of the security interest granted herein, and in pursuance of this obligation, Grantor agrees that:

(i)     Grantor shall not sell, transfer, lease or otherwise dispose of any part of the Collateral or any interest therein or offer to do so, except in the ordinary course of business of Grantor, without the prior written consent of Lender, which shall not be unreasonably withheld, conditioned or delayed, or permit anything to be done that may impair the value of any of the Collateral or the security intended to be afforded by this Agreement.

(ii)     Grantor will comply with all applicable statutes and governmental regulations and pay and discharge, when due, before any penalty attaches thereto for nonpayment thereof, all taxes, assessments and governmental charges of any kind now or hereafter levied upon or assessed against Grantor, the Collateral, any income therefrom or upon the subject of the security interest of Lender; provided, however, that Grantor shall not be required to pay any such taxes, assessments, or other governmental charges so long as Grantor shall in good faith contest the validity thereof, and if such contest is made, Grantor will provide for the payment of the taxes, assessments or other governmental charges so contested.  In the event Grantor, at any time, fails to pay such taxes, assessments and charges, or to obtain

7CV3817.DOCX

discharges, subject to the provision of the preceding sentence relative to contesting such items, Grantor shall so advise Lender thereof in writing and Lender may, in its sole discretion, without waiving or releasing any of Grantor's obligations to Lender or liability of Grantor or any Event of Default, make such payment, or any part thereof, or obtain such discharge or take other action with respect thereto which Lender deems advisable. All sums so paid by Lender and any expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorneys' fees, shall be immediately due and payable from Grantor to Lender.

(iii)   Grantor hereby authorizes Lender to record a financing statement or statements necessary to perfect Lender's security interest in the Collateral, and pay all costs and fees associated with filing such financing statement or statements. Grantor shall sign and execute alone or with Lender any other document or procure any documents and pay all connected costs, expenses and fees, including, without limitation, reasonable attorney's fees, necessary to protect the security interest under this Agreement against the rights, interests or claims of third persons;

(iv)   Grantor shall reimburse Lender for all reasonable costs, expenses and fees, including, without limitation, court costs and reasonable attorney's fees, incurred for any action taken by Lender to remedy a default of Grantor under this Agreement;

(v)   Grantor hereby authorizes Lender to file any financing statement in the future necessary to fully perfect the security interest created herein, and Grantor shall (A) from time to time promptly execute and deliver to Lender all such other assignments, certificates, supplemental writings and other document, and do all other acts or things as Lender may reasonably request in order to more fully evidence and perfect the security interest created herein; (B) punctually and properly perform all of Grantor's agreements and obligations under this Agreement, the Note, the Loan Agreement and the other Loan Documents and under any other security agreement, mortgage, deed of trust, collateral pledge, agreement or contract of any kind now or hereafter existing as security for and in connection with payment of the Indebtedness, or any part thereof; (C) pay the Indebtedness in accordance with the terms thereof and in accordance with the terms of this Agreement, the Note, the Loan Agreement and the other Loan Documents or other writings evidencing the Indebtedness, or any part thereof; (D) promptly furnish Lender with any information or writings which Lender may reasonably request concerning the Collateral; (E) allow Lender to inspect all records of Grantor relating to the Collateral, the Indebtedness and the business and operation of Grantor, and to make and take away copies of such records; (F) promptly notify Lender of any change in any facts or circumstances warranted or represented by Grantor in this Agreement or in any other writing furnished by Grantor to Lender in connection with the Collateral, the Indebtedness and the business and operation of Grantor; (G) promptly notify Lender of any claim, action or proceeding affecting title to the Collateral, or any part thereof, or the security interest created herein, and, at the request of Lender, appear in and defend, at Grantor's sole cost and expense, any such action or proceeding; and (H) promptly, after being requested by Lender, pay to Lender the amount of all reasonable expenses, including, without limitation, reasonable attorney's fees, court costs and other legal expenses, incurred by Lender in enforcing the security interest created herein;

7CV3817.DOCX

(vi)    Grantor shall not, without the prior written consent of Lender: create any other security interest in, mortgage, pledge, or otherwise encumber the Collateral, or any part thereof, or permit the same to be or become subject to any lien, attachment, execution, sequestration, other legal or equitable process, or any encumbrance of any kind or character;

(vii)    Should the Collateral, or any part thereof ever be in any manner converted by its issuer or maker into another type of property or any money or other proceeds ever be paid or delivered to Grantor as a result of Grantor's rights in the Collateral, then, in any such event, all such property, money and other proceeds shall become part of the Collateral, and Grantor covenants to forthwith pay or deliver to Lender all of the same which is susceptible of delivery and, at the same time, if Lender deems it necessary and so requests, Grantor will properly endorse or assign the same.  With respect to any of such property of a kind requiring any additional security agreement, financing statement or other writing to perfect a security interest therein in favor of Lender, Grantor will forthwith execute and deliver to Lender whatever Lender shall reasonably deem necessary or proper for such purpose; and

(viii)    In the event that Grantor fails to perform any covenant, duty or agreement of Grantor to be performed in accordance with its terms hereunder, Lender may, but shall never be obligated to, perform or attempt to perform such covenant, duty or agreement on behalf of Grantor, and any reasonable amount expended by Lender in such performance or attempted performance shall become a part of the Indebtedness, and, at the request of Lender, Grantor agrees to pay such amount promptly to Lender at Lender's address set forth opposite its name below, or at such other place as Lender may designate, together with interest thereon at the "Default Rate" (as such term is defined in the Apex Line of Credit Note) from the date of such expenditure by Lender until paid.

3.    Default. The occurrence of any one or more of the following shall be an "Event of Default" for purposes of this Agreement (subject to any applicable cure periods set forth in the Loan Documents if no applicable cure period is set forth herein):

(a)    Failure to Pay: The Borrower's failure to pay when due any sums owed by Borrower to Lender under the Note or any other obligation owed by Borrower to Lender;

(b)    Untrue Representations and Warranties: The breach of any of the representations or warranties of Grantor as set forth in this Agreement in any material respect;

(c)    Non-performance of Grantor's Liabilities: If any default shall occur in the due and punctual performance of or compliance with any of the terms, covenants, conditions or agreements contained herein (other than as described in any other provision of this Section) and shall not have been cured within any applicable notice and cure period;

(d)    Assignment for Benefit of Creditors: The execution of an assignment for the benefit of creditors by Borrower or the filing of a petition for relief under the United States Bankruptcy Code, whether voluntary or involuntary;

7CV3817.DOCX

(e)    <u>Process Against the Collateral</u>:  The levy of any execution, attachment, sequestration or other writ against the Collateral or any part thereof not dismissed within sixty (60) days after such levy; or

(f)    <u>Default under Loan Documents</u>:  The occurrence of any Event of Default under any of the other Loan Documents.

4.    <u>Consequences of Default</u>.  Upon the occurrence of any such Event of Default, and expiration of any applicable cure periods provided in the Loan Documents, Lender may, at its option, declare all Indebtedness secured hereby to be immediately due and payable to Lender without demand or notice of any kind whatsoever, and such Indebtedness thereupon shall immediately become due and payable to Lender without demand or notice, but with such adjustments, if any, with respect to interest or other charges as may be provided for herein or in the Note, the Loan Agreement, the other Loan Documents or any other written agreements between Borrower and Lender.

5.    <u>Lender's Rights and Remedies</u>.  Lender shall have available to it the following rights and remedies:

(a)    <u>Right to Assign</u>.  Lender may assign this Agreement, and if Lender does assign this Agreement, the assignee shall be entitled to the performance of all of Grantor's agreements and obligations under this Agreement, and the assignee shall be entitled to all the rights and remedies of Lender under this Agreement.

(b)    <u>Right to Discharge Grantor's Liabilities</u>.  Lender may, at its option, discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral, may remedy or cure any default of Grantor under the terms of any lease, rental agreement or other document which in any way pertains to or affects Grantor's title to or interest in any of the Collateral, may pay for insurance on the Collateral, and may pay for the maintenance and preservation of the Collateral, and Grantor agrees to reimburse Lender, on demand, for any payment made or any reasonable expense incurred by Lender, including, without limitation, attorney's fees, pursuant to the foregoing authorization, together with interest at the Default Rate from the date so paid or incurred by Lender, which payments, expenses and interest shall be secured by the security intended to be afforded by this Agreement and/or by the Loan Agreement and the other Loan Documents. In the event Lender makes any payment or incurs any expenses pursuant to this Section 5 (b), Lender shall provide Grantor a statement setting forth all such payments made or expenses incurred.

(c)    <u>Right of Enforcement</u>.  Lender shall have and may exercise any and all rights of enforcement and remedies before or after default afforded to a Lender under the UCC, together with any and all other rights and remedies otherwise provided and available to Lender at law or in equity as of the date of this Agreement or the date of Grantor's default; and, in conjunction with, in addition to, or substitution for those rights and remedies, at Lender's discretion, Lender may:

7CV3817.DOCX

(i)     To the extent permitted by law, enter upon Grantor's premises to take possession of, assemble and collect the Collateral or to render it or any portion of the Collateral unusable; and/or

(ii)     Remedy any default in any reasonable manner, without waiving its rights and remedies upon default and without waiving any other prior or subsequent default.

(d)     Right of Sale.

(i)     Grantor agrees that following an Event of Default, after expiration of any applicable notice and cure periods, Lender may, at its option, sell or dispose of the Collateral at public or private sale without any previous demand of performance or notice to Grantor of any such sale whatsoever, except as provided under the UCC, and from the proceeds of sale retain: (A) all costs and charges incurred by Lender in taking and causing the removal and sale of said property, including such reasonable attorney's fees as shall have been incurred by Lender; and (B) all sums due pursuant to the Note, the Loan Agreement, the other Loan Documents and this Agreement, and all accrued interest thereon.  Any surplus of such proceeds remaining shall be paid to Grantor.

(ii)     At any sale or sales made pursuant to this Agreement or in a suit to foreclose the same, the Collateral may be sold in masse or separately, at the same or at different times, at the option of Lender or its assigns. Such sale may be public or private, with notice as required by the UCC, and the Collateral need not be present at the time or place of sale. At any such sale, Lender or the holder of the Note hereby secured may bid for and purchase any of the property sold, notwithstanding that such sale is conducted by Lender or its attorneys, agents, or assigns, and no irregularity in the manner of sale or of giving notice shall operate to preclude Lender from recovering the Indebtedness.

(iii)     If any notification of intended sale or other disposition of the Collateral or any part thereof is required under the UCC or other law, such notification, if mailed, shall be deemed reasonably and properly given if mailed to Grantor at least ten (10) days before such sale or disposition.

(e)     Power of Attorney.  Grantor hereby authorizes Lender to make, constitute and appoint any officer or agent of Lender, as Lender may select in the Lender's sole discretion, as Grantor's true and lawful attorney-in-fact, with power (i) to endorse Grantor's name on all applications, documents, papers and instruments necessary or desirable for the Lender to protect its security interest in the Collateral, (ii) from and after the occurrence of any Event of Default (after any applicable grace or cure periods) in accordance with this Agreement and applicable law, (y) to assign, pledge, convey or otherwise transfer title in or dispose of the Collateral to anyone, and (z) to enforce or use the patents or trademarks or to grant or issue any exclusive or non-exclusive license under the patents or trademarks to any third party, or to sell, assign, transfer, pledge, encumber or otherwise transfer title in or dispose of the patents or trademarks to any third party. This power of attorney shall be irrevocable until all of the Indebtedness has been paid in full and all of the financing arrangements between Grantor and Lender have been terminated and Lender has no further obligation to make loans to Grantor.

7CV3817.DOCX

Force Midwest LLC *et. al*
MAG Security Agreement – Page 8

(f)      Miscellaneous. Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times. The failure of Lender at any time or times to enforce its rights under said provisions strictly in accordance with the same shall not be construed or operate as a waiver of any of the rights and remedies granted Lender hereunder or as having created a custom in any way or manner contrary to the specific provisions of this Agreement or as having in any way or manner modified the same. All rights and remedies of Lender are cumulative and concurrent, and the exercise of one right or remedy by Lender shall not be deemed a waiver or release of any other right or remedy. Except as otherwise specifically required herein, notice of the exercise of any right, remedy or power granted to Lender by this Agreement is not required to be given.

6.      Representations and Warranties. Grantor represents and warrants that:

(a)      Grantor has authority to execute and deliver this Agreement;

(b)      Except for those financing statements filed of record in the office of the Missouri Secretary of State as of the date of this Agreement with respect to security interests approved by Lender (the "Permitted Liens"), as of the date hereof, no financing statement covering the Collateral, or any part thereof, has been filed with any filing officer;

(c)      Except for the Permitted liens, the Collateral is free and clear of all liens and encumbrances, and, as of the date hereof, no other security agreement covering the Collateral, or any part thereof, has been made and no security interest, other than the one herein created, has attached or been perfected in the Collateral or in any part thereof;

(d)      No dispute, right of set-off, counterclaim or defenses exist with respect to any part of the Collateral;

(e)      All information supplied and statements made in any financial or credit statement or application for credit heretofore delivered to Lender by or on behalf of Grantor or any guarantor of the Note prior to the execution of this Agreement are true and correct in all material respects as of the date hereof; and

(f)      At the time Lender's security interest created herein and/or by virtue of any of the other Loan Documents attaches to any of the Collateral or its proceeds, Grantor will be the lawful owner with the right to transfer any interest therein, and Grantor will make such further assurances so as to prove title to the Collateral in Grantor as may be required and will defend the Collateral and its proceeds against the lawful claims and demands of all persons whomsoever.

The delivery at any time by Grantor to Lender of the Collateral shall constitute a representation and warranty by Grantor under this Agreement that, with respect to such Collateral, and each item thereof, Grantor is the owner of the Collateral and the matters heretofore represented and warranted in this Paragraph 6 are true, complete and correct. Further,

7CV3817.DOCX

Force Midwest LLC *et. al*
MAG Security Agreement – Page 9

Grantor, at the request of Lender, agrees to amend this Agreement and any and all financing statements filed in connection therewith for the purpose of setting forth in said Agreement and said financing statements an accurate and itemized list, when known, of the Collateral now generally described herein and in said financing statements and to include in said accurate and itemized list an identification of the Collateral by make, model, serial number and other appropriate descriptive data.

7.     <u>Mutual Agreements</u>. Grantor and Lender mutually agree as follows:

(a)     "Grantor" and "Lender" as used in this Agreement include the successors and permitted assigns of those parties.

(b)     This Agreement includes all amendments and supplements thereto and all assignments thereof. This Agreement shall not be amended, modified or supplemented without the written agreement of Grantor and Lender at the time of such amendment, modification or supplement.

(c)     It is expressly intended, understood and agreed that this Agreement, the Note, the Loan Agreement and the other Loan Documents are made and entered into for the sole protection and benefit of the parties thereto, and their respective successors and assigns (but in the case of assigns of Grantor or Borrower, only to the extent permitted under the Loan Documents), and no other person or persons shall have any right of action hereunder or rights to the Loan proceeds at any time; that the Loan proceeds do not constitute a trust fund for the benefit of any third party; that no third party shall under any circumstances be entitled to any equitable lien on any undisbursed Loan proceeds at any time; and that Lender shall have a lien upon and right to direct application of any undisbursed Loan proceeds as additional security for this Agreement, the Note, the Loan Agreement and the other Loan Documents. The relationship between Lender and Borrower is solely that of a lender and borrower, and nothing contained herein, or in the Note, the Loan Agreement or the other Loan Documents shall in any manner be construed as making the parties hereto partners, joint venturers or creating any other relationship other than lender and borrower.

(d)     This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri. All provisions of this Agreement shall be deemed valid and enforceable to the extent permitted by law. Any provision or provisions of this Agreement which are held unenforceable, invalid or contrary to law by a court of competent jurisdiction, or the inclusion of which would affect the validity or enforceability of this Agreement, shall be of no force or effect, and in such event each and all of the remaining provisions of this Agreement shall subsist and remain and be fully effective according to the tenor of this Agreement as though such invalid, unenforceable or unlawful provision or provisions had not been included in this Agreement.

(e)     To the extent permitted by law, Grantor hereby waives any and all rights to require marshalling of assets by Lender.

7CV3817.DOCX

(f)     Any and all notices given in connection with this Agreement shall be delivered in accordance with the procedures set forth in the Loan Agreement.

(g)     Grantor hereby agrees that no liability shall be asserted or enforced by Grantor against Lender in its exercise of the powers and rights herein granted, all such liability being hereby expressly waived and released by Grantor.  Grantor hereby agrees to indemnify, defend and hold Lender harmless from and against any and all liability, expense, cost or damage which may be incurred by, asserted against or imposed upon Lender at any time which relates to or arises from the use, operation or lease of any of the Collateral or the exercise by Lender of the powers and rights herein granted.

(h)     This Agreement shall inure to the benefit of Lender, its successors and assigns and shall be binding upon Grantor and its successors and permitted assigns.

(i)     Lender is hereby authorized to rely upon and accept as an original this Agreement or any communication which is sent to the Lender by facsimile, telegraphic or other electronic transmission (each, a "Communication") which the Lender in good faith believes has been signed by Grantor and has been delivered to Lender by a properly authorized representative of the Grantor, whether or not that is in fact the case.  Notwithstanding the foregoing, Lender shall not be obligated to accept any such Communication as an original and may in any instance require that an original document be submitted to the Lender in lieu of, or in addition to, any such Communication.

(j)     Should this Agreement be signed by more than one party, all obligations contained shall be deemed to be the joint and several obligations of each party executing this Security Agreement.

(k)     This Agreement may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document.  An electronic transmission or other facsimile of this Agreement or any of the Loan Documents shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

8.     Venue.  Venue for any action arising pursuant to or to enforce any provision of this Agreement shall be exclusively found in the Circuit Court of Jackson County, Missouri. Grantor hereby submits to the jurisdiction of the Circuit Court of Jackson County, Missouri.

9.     Waiver of Jury Trail.  **GRANTOR WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GRANTOR AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.**

7CV3817.DOCX

**THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GRANTOR, AND GRANTOR HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. GRANTOR AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS DOCUMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GRANTOR TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.**

IN WITNESS WHEREOF, Grantor and Lender have caused this Security Agreement to be executed by their duly authorized officer, manager, or representative as of the date set forth below.

**"GRANTOR"**

**MAG TRUCKS, LLC,** a Missouri limited liability company

By: _____        Date: _12/2/19_
   Brad Carlson, Manager


**"LENDER"**

**ENTERPRISE BANK & TRUST**

By: _____        Date: _12/2/19_
   Aaron Wiens, Vice President

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Agreement") is made effective December 2, 2019 by **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Grantor"), with a mailing address of 3320 S. Outer Belt Road, Grain Valley, Missouri 64029, to and for the benefit of **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender"), with a mailing address of 12695 Metcalf Avenue, Overland Park, Kansas 66213.

## R E C I T A L S:

A.    Grantor and **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Force") **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MULUNGAS, LLC,** a Missouri limited liability company ("Mulungas"), and **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Force Commercial" and together with Grantor, Force, Apex, MAG, and Mulungas, collectively herein "Borrower") have executed and delivered to Lender that certain Business Loan Agreement (the "Loan Agreement") dated of even date herewith under the terms of which Lender has agreed to make the following loans: (i) a loan to and for Borrower in the original principal amount of **ONE MILLION and 00/100THS DOLLARS ($1,000,000.00)** (the "Apex Line of Credit Loan"), (ii) a loan to and for Borrower in the original principal amount of **TWO MILLION and 00/100THS DOLLARS ($2,000,000.00)** (the "MAG Line of Credit Loan"), (iii) a loan to and for Borrower in the original principal amount of **SIX HUNDRED SIXTY-TWO THOUSAND NINE HUNDRED FOURTEEN and 00/100THS DOLLARS ($662,914.00)** (the "Apex Term Loan"), and (iv) a loan to and for Borrower in the original principal amount of **TWO MILLION EIGHT HUNDRED THIRTY-TWO THOUSAND and 00/100THS DOLLARS ($2,832,000.00)** (the "Mulungas Term Loan").

B.    (i) The Apex Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$1,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "Apex Line of Credit Note"), (ii) the MAG Line of Credit Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,000,000.00** (as the same may from time to time be amended, modified, restated, increased, or extended, the "MAG Line of Credit Note"), (iii) the Apex Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$662,914.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Apex Term Note"), and (iv) the Mulungas Term Loan is evidenced by that certain Promissory Note dated of even date herewith made by Borrower in favor of Lender in the original principal amount of **$2,832,000.00** (as the same may from time to time be amended, modified, restated, increased or extended, the "Mulugas Term Note").

C.    For purposes of this Agreement the following definitions apply:

(i)    the Apex Line of Credit Loan, the MAG Line of Credit Loan, the Apex

Term Loan, and the Mulungas Term  Loan are collectively referred to herein as the "Loan";

(ii)     the Apex Line of Credit Note, the MAG Line of Credit Note, the Apex Term Note, and the Mulungas Term Note are collectively referred to herein as the "Note"; and

(iii)     all capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement.

C.     Grantor is willing, on the terms and conditions contained herein, in the Loan Agreement, in the Note and in the other Loan Documents (as defined in the Loan Agreement), to secure Grantor's obligations under the Note and the other Loan Documents.

D.     Lender has required as a condition to making credit available to Borrower under the terms of the Note and the Loan Agreement that Grantor secure Borrower's obligations to Lender with certain assets of the Grantor.

NOW THEREFORE, for and in consideration of the making of the Loan and the extensions of credit as contemplated under the Loan Agreement and as an inducement to Lender to do so, and for and in consideration of the mutual promises, covenants and agreements hereinafter set forth, Grantor and Lender hereby agree as follows:

1.     <u>Creation of Security Interest</u>.  Grantor hereby grants to Lender a lien on and security interest in and does hereby collaterally assign, pledge, mortgage, convey and set over unto Lender all of the assets of Grantor including, without limitation, the following whether now owned or hereafter acquired by or on behalf of Grantor (hereinafter referred to collectively as the "Collateral"):

A.     All new and used automobiles, vans, trucks and other vehicles held for sale or lease by Grantor, including all additions and accessories thereto, and all other inventory of Grantor including Grantor's raw materials, work in progress, finished goods, merchandise, parts and supplies, goods held for sale or lease or furnished under contracts of service in which Grantor now has or hereafter acquires any right, and all documents of title, warehouse receipts, bills of lading, and all other documents of every type covering the forgoing;

B.     All accounts, including trade accounts, account receivable, other receivables, or other right to payment for goods or services rendering owing to Grantor, amounts due from credit card payments, leases, rents, and license fees, and other rights to receive the payment of money;

C.     All deposit accounts, including the Primary Deposit Account, deposits, monies, contract rights, documents, instruments, general intangibles, chattel paper, securities accounts, brokerage accounts (excluding all IRA and Keogh accounts) as those terms are defined in the Uniform Commercial Code ("UCC");

D     All investment property and securities and Grantor's rights to receive distributions, dividends, or other benefits of ownership of all entities in which Grantor is a member;

7CV4129.DOCX

Force Midwest LLC <em>et. al</em><br>Mid Western Automotive Security Agreement – Page 2

E.	All general intangibles of any kind including patents, trademarks, copyrights, trade names, created software, and licenses;

F.	All machinery, equipment, furniture, fixtures, furnishings, tools, software, and supplies; and

G.	All additions, accessions, modifications, improvements, replacements, and substitutions of any of the foregoing as well as all proceeds, whether cash, promissory notes, and other property, real or personal or otherwise, resulting from the sale or other disposition of all or any part of the foregoing, including insurance proceeds, whether now or hereafter existing.

For purposes hereof, the term "receivables" shall mean and include all of Grantor's present and future rights to payment for goods, merchandise or inventory sold or leased or for services rendered, including, without limitation, those which are not evidenced by instruments or chattel paper, and whether or not they have been earned by performance, whether or not the same are listed on any schedules, reports or assignments furnished to Lender from time to time, or any letters of credit on which Grantor is named as beneficiary, contract rights, chattel paper, instruments, documents, insurance proceeds, and all such obligations whatsoever owing to Grantor, together with all instruments and all documents of title representing any of the foregoing, all rights in any goods, merchandise or inventory which any of the same may represent, all rights in any returned or repossessed goods, merchandise and inventory, and all right, title, security and guaranties with respect to each of the foregoing, including, without limitation, any right of stoppage in transit, replevin and reclamation and all other rights and remedies of an unpaid vendor or lienor, and any liens held by Grantor as a mechanic, contractor, subcontractor, processor, materialman, machinist, manufacturer, artisan or otherwise.

2.	Grantor's Liabilities.

(a)	Payment of Indebtedness. The security interest created herein is given as additional security for: the payment to Lender of all indebtedness evidenced by and according to the terms of the Note, the Loan Agreement and the other Loan Documents; the payment of all sums hereafter loaned, paid out, expended or advanced by Lender under the terms of this Agreement, together with interest thereon; all extensions, increases, or renewals of the Note, the Loan Agreement and the other Loan Documents evidencing sums hereafter loaned, paid out, expended or advanced by Lender, its successors or assigns, to or for the account of Borrower; the discharge and performance of all agreements and obligations under each of the Note, the Loan Agreement and the other Loan Documents; and the payment of any other debt obligations that Borrower may heretofore or hereafter agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender (all of the foregoing are hereinafter collectively called the "Indebtedness").

(b)	Protection of Collateral. Grantor shall take any and all steps required in the reasonable judgment of Lender to protect the Collateral and in pursuance thereof Grantor agrees that the tangible Collateral:

7CV4129.DOCX

(i)    Shall be kept at Grantor's facility located at 3320 S. Outer Belt Road, Grain Valley, Missouri 64029 or at some other location agreed to by Lender in writing, and shall be used only in the ordinary course of the Grantor's business and the operation thereof;

(ii)    Shall not be misused, wasted or allowed to deteriorate, except for the ordinary wear and tear resulting from its use, as aforesaid;

(iii)    To the extent insurable, shall at all times be insured against loss, damage, theft and such other risks as Lender may require in such amounts, with such companies, with such deductibles, under such policies, in such form and for such periods as shall be satisfactory to Lender, and each such policy shall provide that the loss thereunder and the proceeds payable thereunder shall be payable to Lender as its interest may appear, and any proceeds of such insurance which may be received by Lender shall be applied as required under the Loan Documents;

(iv)    Shall not be used in violation of any applicable statute, law, rule, regulation or ordinance;

(v)    Shall be kept and maintained in good operating condition and repair and Grantor shall make all necessary replacements thereof and renewals thereto so that the value and operating efficiency thereof shall at all times be maintained and preserved, except where the failure to so maintain and preserve would not have a material adverse effect on the business, financial conditions or operations of Grantor; and

(vi)    With 24 hours prior notice, may be examined and inspected by Lender during regular business hours, wherever located.

(c)    <u>Protection of Security Interest</u>.  Grantor shall take any and all steps necessary to protect the priority of the security interest granted herein, and in pursuance of this obligation, Grantor agrees that:

(i)    Grantor shall not sell, transfer, lease or otherwise dispose of any part of the Collateral or any interest therein or offer to do so, except in the ordinary course of business of Grantor, without the prior written consent of Lender, which shall not be unreasonably withheld, conditioned or delayed, or permit anything to be done that may impair the value of any of the Collateral or the security intended to be afforded by this Agreement.

(ii)    Grantor will comply with all applicable statutes and governmental regulations and pay and discharge, when due, before any penalty attaches thereto for nonpayment thereof, all taxes, assessments and governmental charges of any kind now or hereafter levied upon or assessed against Grantor, the Collateral, any income therefrom or upon the subject of the security interest of Lender; provided, however, that Grantor shall not be required to pay any such taxes, assessments, or other governmental charges so long as Grantor shall in good faith contest the validity thereof, and if such contest is made, Grantor will provide for the payment of the taxes, assessments or other governmental charges so contested.  In the event Grantor, at any time, fails to pay such taxes, assessments and charges, or to obtain

7CV4129.DOCX

discharges, subject to the provision of the preceding sentence relative to contesting such items, Grantor shall so advise Lender thereof in writing and Lender may, in its sole discretion, without waiving or releasing any of Grantor's obligations to Lender or liability of Grantor or any Event of Default, make such payment, or any part thereof, or obtain such discharge or take other action with respect thereto which Lender deems advisable. All sums so paid by Lender and any expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorneys' fees, shall be immediately due and payable from Grantor to Lender.

(iii)    Grantor hereby authorizes Lender to record a financing statement or statements necessary to perfect Lender's security interest in the Collateral, and pay all costs and fees associated with filing such financing statement or statements. Grantor shall sign and execute alone or with Lender any other document or procure any documents and pay all connected costs, expenses and fees, including, without limitation, reasonable attorney's fees, necessary to protect the security interest under this Agreement against the rights, interests or claims of third persons;

(iv)    Grantor shall reimburse Lender for all reasonable costs, expenses and fees, including, without limitation, court costs and reasonable attorney's fees, incurred for any action taken by Lender to remedy a default of Grantor under this Agreement;

(v)    Grantor hereby authorizes Lender to file any financing statement in the future necessary to fully perfect the security interest created herein, and Grantor shall (A) from time to time promptly execute and deliver to Lender all such other assignments, certificates, supplemental writings and other document, and do all other acts or things as Lender may reasonably request in order to more fully evidence and perfect the security interest created herein; (B) punctually and properly perform all of Grantor's agreements and obligations under this Agreement, the Note, the Loan Agreement and the other Loan Documents and under any other security agreement, mortgage, deed of trust, collateral pledge, agreement or contract of any kind now or hereafter existing as security for and in connection with payment of the Indebtedness, or any part thereof; (C) pay the Indebtedness in accordance with the terms thereof and in accordance with the terms of this Agreement, the Note, the Loan Agreement and the other Loan Documents or other writings evidencing the Indebtedness, or any part thereof; (D) promptly furnish Lender with any information or writings which Lender may reasonably request concerning the Collateral; (E) allow Lender to inspect all records of Grantor relating to the Collateral, the Indebtedness and the business and operation of Grantor, and to make and take away copies of such records; (F) promptly notify Lender of any change in any facts or circumstances warranted or represented by Grantor in this Agreement or in any other writing furnished by Grantor to Lender in connection with the Collateral, the Indebtedness and the business and operation of Grantor; (G) promptly notify Lender of any claim, action or proceeding affecting title to the Collateral, or any part thereof, or the security interest created herein, and, at the request of Lender, appear in and defend, at Grantor's sole cost and expense, any such action or proceeding; and (H) promptly, after being requested by Lender, pay to Lender the amount of all reasonable expenses, including, without limitation, reasonable attorney's fees, court costs and other legal expenses, incurred by Lender in enforcing the security interest created herein;

7CV4129.DOCX

(vi)    Grantor shall not, without the prior written consent of Lender: create any other security interest in, mortgage, pledge, or otherwise encumber the Collateral, or any part thereof, or permit the same to be or become subject to any lien, attachment, execution, sequestration, other legal or equitable process, or any encumbrance of any kind or character;

(vii)    Should the Collateral, or any part thereof ever be in any manner converted by its issuer or maker into another type of property or any money or other proceeds ever be paid or delivered to Grantor as a result of Grantor's rights in the Collateral, then, in any such event, all such property, money and other proceeds shall become part of the Collateral, and Grantor covenants to forthwith pay or deliver to Lender all of the same which is susceptible of delivery and, at the same time, if Lender deems it necessary and so requests, Grantor will properly endorse or assign the same. With respect to any of such property of a kind requiring any additional security agreement, financing statement or other writing to perfect a security interest therein in favor of Lender, Grantor will forthwith execute and deliver to Lender whatever Lender shall reasonably deem necessary or proper for such purpose; and

(viii)    In the event that Grantor fails to perform any covenant, duty or agreement of Grantor to be performed in accordance with its terms hereunder, Lender may, but shall never be obligated to, perform or attempt to perform such covenant, duty or agreement on behalf of Grantor, and any reasonable amount expended by Lender in such performance or attempted performance shall become a part of the Indebtedness, and, at the request of Lender, Grantor agrees to pay such amount promptly to Lender at Lender's address set forth opposite its name below, or at such other place as Lender may designate, together with interest thereon at the "Default Rate" (as such term is defined in the Apex Line of Credit Note) from the date of such expenditure by Lender until paid.

3.    Default. The occurrence of any one or more of the following shall be an "Event of Default" for purposes of this Agreement (subject to any applicable cure periods set forth in the Loan Documents if no applicable cure period is set forth herein):

(a)    Failure to Pay: The Borrower's failure to pay when due any sums owed by Borrower to Lender under the Note or any other obligation owed by Borrower to Lender;

(b)    Untrue Representations and Warranties: The breach of any of the representations or warranties of Grantor as set forth in this Agreement in any material respect;

(c)    Non-performance of Grantor's Liabilities: If any default shall occur in the due and punctual performance of or compliance with any of the terms, covenants, conditions or agreements contained herein (other than as described in any other provision of this Section) and shall not have been cured within any applicable notice and cure period;

(d)    Assignment for Benefit of Creditors: The execution of an assignment for the benefit of creditors by Borrower or the filing of a petition for relief under the United States Bankruptcy Code, whether voluntary or involuntary;

7CV4129.DOCX

(e)     Process Against the Collateral: The levy of any execution, attachment, sequestration or other writ against the Collateral or any part thereof not dismissed within sixty (60) days after such levy; or

(f)     Default under Loan Documents: The occurrence of any Event of Default under any of the other Loan Documents.

4.     Consequences of Default. Upon the occurrence of any such Event of Default, and expiration of any applicable cure periods provided in the Loan Documents, Lender may, at its option, declare all Indebtedness secured hereby to be immediately due and payable to Lender without demand or notice of any kind whatsoever, and such Indebtedness thereupon shall immediately become due and payable to Lender without demand or notice, but with such adjustments, if any, with respect to interest or other charges as may be provided for herein or in the Note, the Loan Agreement, the other Loan Documents or any other written agreements between Borrower and Lender.

5.     Lender's Rights and Remedies. Lender shall have available to it the following rights and remedies:

(a)     Right to Assign. Lender may assign this Agreement, and if Lender does assign this Agreement, the assignee shall be entitled to the performance of all of Grantor's agreements and obligations under this Agreement, and the assignee shall be entitled to all the rights and remedies of Lender under this Agreement.

(b)     Right to Discharge Grantor's Liabilities. Lender may, at its option, discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral, may remedy or cure any default of Grantor under the terms of any lease, rental agreement or other document which in any way pertains to or affects Grantor's title to or interest in any of the Collateral, may pay for insurance on the Collateral, and may pay for the maintenance and preservation of the Collateral, and Grantor agrees to reimburse Lender, on demand, for any payment made or any reasonable expense incurred by Lender, including, without limitation, attorney's fees, pursuant to the foregoing authorization, together with interest at the Default Rate from the date so paid or incurred by Lender, which payments, expenses and interest shall be secured by the security intended to be afforded by this Agreement and/or by the Loan Agreement and the other Loan Documents. In the event Lender makes any payment or incurs any expenses pursuant to this Section 5 (b), Lender shall provide Grantor a statement setting forth all such payments made or expenses incurred.

(c)     Right of Enforcement. Lender shall have and may exercise any and all rights of enforcement and remedies before or after default afforded to a Lender under the UCC, together with any and all other rights and remedies otherwise provided and available to Lender at law or in equity as of the date of this Agreement or the date of Grantor's default; and, in conjunction with, in addition to, or substitution for those rights and remedies, at Lender's discretion, Lender may:

7CV4129.DOCX

(i)    To the extent permitted by law, enter upon Grantor's premises to take possession of, assemble and collect the Collateral or to render it or any portion of the Collateral unusable; and/or

(ii)    Remedy any default in any reasonable manner, without waiving its rights and remedies upon default and without waiving any other prior or subsequent default.

(d)    Right of Sale.

(i)    Grantor agrees that following an Event of Default, after expiration of any applicable notice and cure periods, Lender may, at its option, sell or dispose of the Collateral at public or private sale without any previous demand of performance or notice to Grantor of any such sale whatsoever, except as provided under the UCC, and from the proceeds of sale retain: (A) all costs and charges incurred by Lender in taking and causing the removal and sale of said property, including such reasonable attorney's fees as shall have been incurred by Lender; and (B) all sums due pursuant to the Note, the Loan Agreement, the other Loan Documents and this Agreement, and all accrued interest thereon. Any surplus of such proceeds remaining shall be paid to Grantor.

(ii)    At any sale or sales made pursuant to this Agreement or in a suit to foreclose the same, the Collateral may be sold in masse or separately, at the same or at different times, at the option of Lender or its assigns. Such sale may be public or private, with notice as required by the UCC, and the Collateral need not be present at the time or place of sale. At any such sale, Lender or the holder of the Note hereby secured may bid for and purchase any of the property sold, notwithstanding that such sale is conducted by Lender or its attorneys, agents, or assigns, and no irregularity in the manner of sale or of giving notice shall operate to preclude Lender from recovering the Indebtedness.

(iii)    If any notification of intended sale or other disposition of the Collateral or any part thereof is required under the UCC or other law, such notification, if mailed, shall be deemed reasonably and properly given if mailed to Grantor at least ten (10) days before such sale or disposition.

(e)    Power of Attorney. Grantor hereby authorizes Lender to make, constitute and appoint any officer or agent of Lender, as Lender may select in the Lender's sole discretion, as Grantor's true and lawful attorney-in-fact, with power (i) to endorse Grantor's name on all applications, documents, papers and instruments necessary or desirable for the Lender to protect its security interest in the Collateral, (ii) from and after the occurrence of any Event of Default (after any applicable grace or cure periods) in accordance with this Agreement and applicable law, (y) to assign, pledge, convey or otherwise transfer title in or dispose of the Collateral to anyone, and (z) to enforce or use the patents or trademarks or to grant or issue any exclusive or non-exclusive license under the patents or trademarks to any third party, or to sell, assign, transfer, pledge, encumber or otherwise transfer title in or dispose of the patents or trademarks to any third party. This power of attorney shall be irrevocable until all of the Indebtedness has been paid in full and all of the financing arrangements between Grantor and Lender have been terminated and Lender has no further obligation to make loans to Grantor.

7CV4129.DOCX

Force Midwest LLC *et. al*
Mid Western Automotive Security Agreement – Page 8

(f)     Miscellaneous.  Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times.  The failure of Lender at any time or times to enforce its rights under said provisions strictly in accordance with the same shall not be construed or operate as a waiver of any of the rights and remedies granted Lender hereunder or as having created a custom in any way or manner contrary to the specific provisions of this Agreement or as having in any way or manner modified the same. All rights and remedies of Lender are cumulative and concurrent, and the exercise of one right or remedy by Lender shall not be deemed a waiver or release of any other right or remedy. Except as otherwise specifically required herein, notice of the exercise of any right, remedy or power granted to Lender by this Agreement is not required to be given.

6.     Representations and Warranties.  Grantor represents and warrants that:

(a)     Grantor has authority to execute and deliver this Agreement;

(b)     Except for those financing statements filed of record in the office of the Missouri Secretary of State as of the date of this Agreement with respect to security interests approved by Lender (the "Permitted Liens"), as of the date hereof, no financing statement covering the Collateral, or any part thereof, has been filed with any filing officer;

(c)     Except for the Permitted liens, the Collateral is free and clear of all liens and encumbrances, and, as of the date hereof, no other security agreement covering the Collateral, or any part thereof, has been made and no security interest, other than the one herein created, has attached or been perfected in the Collateral or in any part thereof;

(d)     No dispute, right of set-off, counterclaim or defenses exist with respect to any part of the Collateral;

(e)     All information supplied and statements made in any financial or credit statement or application for credit heretofore delivered to Lender by or on behalf of Grantor or any guarantor of the Note prior to the execution of this Agreement are true and correct in all material respects as of the date hereof; and

(f)     At the time Lender's security interest created herein and/or by virtue of any of the other Loan Documents attaches to any of the Collateral or its proceeds, Grantor will be the lawful owner with the right to transfer any interest therein, and Grantor will make such further assurances so as to prove title to the Collateral in Grantor as may be required and will defend the Collateral and its proceeds against the lawful claims and demands of all persons whomsoever.

The delivery at any time by Grantor to Lender of the Collateral shall constitute a representation and warranty by Grantor under this Agreement that, with respect to such Collateral, and each item thereof, Grantor is the owner of the Collateral and the matters heretofore represented and warranted in this Paragraph 6 are true, complete and correct. Further,

7CV4129.DOCX

Grantor, at the request of Lender, agrees to amend this Agreement and any and all financing statements filed in connection therewith for the purpose of setting forth in said Agreement and said financing statements an accurate and itemized list, when known, of the Collateral now generally described herein and in said financing statements and to include in said accurate and itemized list an identification of the Collateral by make, model, serial number and other appropriate descriptive data.

7.      Mutual Agreements. Grantor and Lender mutually agree as follows:

(a)      "Grantor" and "Lender" as used in this Agreement include the successors and permitted assigns of those parties.

(b)      This Agreement includes all amendments and supplements thereto and all assignments thereof. This Agreement shall not be amended, modified or supplemented without the written agreement of Grantor and Lender at the time of such amendment, modification or supplement.

(c)      It is expressly intended, understood and agreed that this Agreement, the Note, the Loan Agreement and the other Loan Documents are made and entered into for the sole protection and benefit of the parties thereto, and their respective successors and assigns (but in the case of assigns of Grantor or Borrower, only to the extent permitted under the Loan Documents), and no other person or persons shall have any right of action hereunder or rights to the Loan proceeds at any time; that the Loan proceeds do not constitute a trust fund for the benefit of any third party; that no third party shall under any circumstances be entitled to any equitable lien on any undisbursed Loan proceeds at any time; and that Lender shall have a lien upon and right to direct application of any undisbursed Loan proceeds as additional security for this Agreement, the Note, the Loan Agreement and the other Loan Documents. The relationship between Lender and Borrower is solely that of a lender and borrower, and nothing contained herein, or in the Note, the Loan Agreement or the other Loan Documents shall in any manner be construed as making the parties hereto partners, joint venturers or creating any other relationship other than lender and borrower.

(d)      This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri. All provisions of this Agreement shall be deemed valid and enforceable to the extent permitted by law. Any provision or provisions of this Agreement which are held unenforceable, invalid or contrary to law by a court of competent jurisdiction, or the inclusion of which would affect the validity or enforceability of this Agreement, shall be of no force or effect, and in such event each and all of the remaining provisions of this Agreement shall subsist and remain and be fully effective according to the tenor of this Agreement as though such invalid, unenforceable or unlawful provision or provisions had not been included in this Agreement.

(e)      To the extent permitted by law, Grantor hereby waives any and all rights to require marshalling of assets by Lender.

7CV4129.DOCX

Force Midwest LLC *et. al*
Mid Western Automotive Security Agreement – Page 10

(f)     Any and all notices given in connection with this Agreement shall be delivered in accordance with the procedures set forth in the Loan Agreement.

(g)     Grantor hereby agrees that no liability shall be asserted or enforced by Grantor against Lender in its exercise of the powers and rights herein granted, all such liability being hereby expressly waived and released by Grantor.  Grantor hereby agrees to indemnify, defend and hold Lender harmless from and against any and all liability, expense, cost or damage which may be incurred by, asserted against or imposed upon Lender at any time which relates to or arises from the use, operation or lease of any of the Collateral or the exercise by Lender of the powers and rights herein granted.

(h)     This Agreement shall inure to the benefit of Lender, its successors and assigns and shall be binding upon Grantor and its successors and permitted assigns.

(i)     Lender is hereby authorized to rely upon and accept as an original this Agreement or any communication which is sent to the Lender by facsimile, telegraphic or other electronic transmission (each, a "Communication") which the Lender in good faith believes has been signed by Grantor and has been delivered to Lender by a properly authorized representative of the Grantor, whether or not that is in fact the case.  Notwithstanding the foregoing, Lender shall not be obligated to accept any such Communication as an original and may in any instance require that an original document be submitted to the Lender in lieu of, or in addition to, any such Communication.

(j)     Should this Agreement be signed by more than one party, all obligations contained shall be deemed to be the joint and several obligations of each party executing this Security Agreement.

(k)     This Agreement may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document.  An electronic transmission or other facsimile of this Agreement or any of the Loan Documents shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

8.     Venue.  Venue for any action arising pursuant to or to enforce any provision of this Agreement shall be exclusively found in the Circuit Court of Jackson County, Missouri. Grantor hereby submits to the jurisdiction of the Circuit Court of Jackson County, Missouri.

9.     Waiver of Jury Trial.  GRANTOR WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GRANTOR AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.

7CV4129.DOCX

THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GRANTOR, AND GRANTOR HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. GRANTOR AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS DOCUMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GRANTOR TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

7CV4129.DOCX

IN WITNESS WHEREOF, Grantor and Lender have caused this Security Agreement to be executed by their duly authorized officer, manager, or representative as of the date set forth below.

**"GRANTOR"**

**MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company

By: _____     Date: 12/2/19
   Brad Carlson, Sole Member

**"LENDER"**

**ENTERPRISE BANK & TRUST**

By: _____     Date: 12/2/19
   Aaron Wiens, Vice President

7CV4129.DOCX